IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| AMANDA ENSING, <br><br> Plaintiff, <br><br> v. <br><br> SEPHORA USA, INC., <br> Serve: Corporation Service Company <br> Which Will Do Business In California As <br> CSC – Lawyers Incorporating Service 2710 <br> Gateway Oaks Dr, Suite 150N <br> Sacramento, CA 95833 <br><br> DEBORAH YEH <br> Serve: 525 Market St FL 32 <br> San Francisco, CA 94105 <br><br> and <br> DOES 1-1000, inclusive, <br><br> Defendants. | Civil Action No.: <br><br> JURY DEMAND |

## COMPLAINT

Amanda Ensing (hereinafter "Plaintiff" or "Ms. Ensing"), by and through her attorneys, brings this action because Defendant Sephora USA, Inc. (hereinafter "Defendant Sephora" or "Sephora"), Deborah Yeh (hereinafter "Defendant Yeh") and Does 1-1000 (collectively, "Defendants"), made false and defamatory statements online about Ms. Ensing, exposing her to public hatred, ridicule, and contempt, and costing Ms. Ensing her business and brand as a social media beauty influencer.

## BRIEF SUMMARY OF THE CASE

1. Advertising through social media influencers provides a new means for brands to reach consumers in the modern era. Influencers are social media personalities paid to leverage

1

their popularity to market products and shape consumer preferences establishing a loyal audience in a particular niche. The values at the core of influencer marketing are authenticity and trust by their audiences.

2. The issues in this case arise from false and defamatory statements against the Plaintiff Amanda Ensing, by Sephora and its agents, a global online beauty supply retailer, upon publicly terminating their brand endorsement with Ms. Ensing.

3. Ms. Ensing is a family-friendly social media beauty and lifestyle influencer who is honest with her subscribers about her Christian and conservative values. In early 2021, Sephora defamed Ms. Ensing, as the company issued a statement across its social media platforms including the company's largest social media platform, Instagram, spreading the defamation across its over its 20.7 million followers.

4. Ms. Ensing suffered a backlash of severe, sustained, and aggressive abuse online that made news on several internet media sites, further spreading the false and defamatory statements. This backlash was the direct result of Defendant Sephora's defamatory remarks, aimed at driving Ms. Ensing out of the beauty industry.[1]

5. Defendant Sephora defamed Ms. Ensing stating Ms. Ensing "made light of the violence and tragic loss of life at our nation's Capital last month." Further, Sephora and its agents falsely claim Ms. Ensing supported violent or racist ideology. These assertions are categorically untrue. Ms. Ensing's comments on social media never made light of violence; in fact, she repeatedly disavowed violence and called for peace.

---

[1] Each of the following internet sites covered the Plaintiff's severance from Sephora, including Cosmeticsbusiness.com, Insider.com, Glossy.com, NewYorkPost.com, TheHill.com, TeenVogue.com, Distractify.com, FoxBusiness.com, News.com.au, TheDailyBeast.com, Influence.com, TheSun.com, MovieGuide.com, and PR News, among others internet media sites.

6. Defendant Sephora's Chief Marketing Officer, Deborah Yeh, stated in an email to "all members of the Sephora employee community" that Ms. Ensing "used her platform to share or highlight racially insensitive and discriminatory language, and made light of the violence at our nation's Capital." This further act of defamation continued to disrupt Ms. Ensing's position in the beauty community, causing even greater damages.

7. Accordingly, this lawsuit asserts claims against the Defendants for defamation, false light invasion of privacy, interference with contractual relations, interference with economic advantage, and conspiracy for imputing hate speech to Ms. Ensing contrary to the company's inclusion and diversity policies. These defamatory remarks were calculated and largely successful in driving Ms. Ensing from the beauty industry.

## PARTIES

8. Plaintiff Amanda Ensing is an individual natural person and citizen of the United States and of the State of Tennessee where she and her family reside.

9. Defendant Sephora USA, Inc. is a Michigan corporation with its principal corporate office located at 525 Market Street, 32nd Floor, San Francisco, California. Sephora describes itself as "a leader in global prestige retail." The Defendant operates approximately 2,300 stores in 33 countries worldwide, and approximately 400 stores in the United States. Defendant Sephora is an American subsidiary of an international retailer of cosmetics.

10. Defendant Deborah Yeh is Sephora's Chief Marketing Officer. Defendant Yeh is sued in both her individual and representative capacity. Defendant Yeh is an officer of Defendant Sephora whose conduct can be imputed to the corporation.

11. Plaintiff is unaware of the true names, capacities, or bases for liability of Does 1 through 1000, inclusive, and therefore sues such Defendants by their fictitious names. Plaintiff

will amend this Complaint to allege their true names, capacities, and bases for liability when the same has been ascertained.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). The amount of amount in controversy exceeds $75,000, exclusive of costs and interest. Plaintiff AMANDA ENSING is a citizen of Tennessee. SEPHORA USA, INC. is a corporation incorporated under the laws of Michigan with its principal place of business in California and is authorized and doing business through the state of Tennessee. DEBORAH YEH is a citizen of California.

13. This Court has personal jurisdiction over Defendants as all Defendants have availed themselves of the benefits of conducting business in Tennessee, thereby satisfying the minimum contacts necessary. *See International Shoe v Washington*, 326 U.S. 310 (1945).

14. Defendant Yeh availed herself to the Court's jurisdiction through her publication of the defamatory statements across the entire "Sephora employee community" including recipients located in this Court's district.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events, acts, and omissions giving rise to Ms. Ensing's claims occurred in this District, Ms. Ensing is domiciled in this District, Ms. Ensing suffered the harms in this District, and Defendant Sephora also maintains retail locations in this District and regularly conducts business in this District.

## STATEMENT OF FACTS

16. Ms. Ensing is a young Latina woman who, prior to January 29, 2021, was known for her family-friendly beauty and makeup videos on YouTube and Instagram. She had

4

Case 3:21-cv-00421   Document 1   Filed 05/27/21   Page 4 of 20 PageID #: 4

approximately 1.4 million subscribers on YouTube and 1.4 million followers on Instagram. She generated approximately $100,000 a month in revenue from beauty product sponsorships alone. She has worked with the Defendant Sephora on approximately three collaborations.

17. Ms. Ensing was diligent and loyal, receiving substantial praise for the quality of her vlogging work with Defendant Sephora. She was never disciplined or suspended during her entire tenure at Sephora as a retail associate or vlogging for Sephora as a brand influencer on YouTube or Instagram.

18. On the morning of January 6, 2021, Ms. Ensing posted a picture on Twitter of then-President Donald Trump with the caption: "It will be Biblical"— *Amanda Ensing (@AmandaEnsing) January 6, 2021*". Ms. Ensing was vocal about the future of America under President Joseph Biden: "There's not enough popcorn in the world for what's about to happen," she tweeted, adding, "This is referring to the amount of corruption about to be revealed in our government. As usual, the left twists our words."— *Amanda Ensing (@AmandaEnsing) January 6, 2021*.

19. As the events of January 6 unfolded, and more violence, including the tragic loss of life was reported in the media and on social media, Ms. Ensing tweeted, "PRAY! Pray for Justice & Truth, Pray for protection and safety. We need Peace." — *Amanda Ensing (@AmandaEnsing) January 6, 2021*.

20. Ms. Ensing called for people to pray for peace and justice, shared several Bible verses, and maintained that she did not condone the violence at The Capitol: "To clarify: this was NOT condoning violence at The Capitol. Violence is NEVER okay, no matter which party it is. I was referring to corruption I believe will be exposed in the coming weeks & would be set in stone

after certification of a rigged election. That was not my intention. *https://t.co/VfRQzDMeld— Amanda Ensing (@AmandaEnsing) January 8, 2021*." Ms. Ensing tweeted.

21. On or about January 11, 2021 RewardStyle Inc. on behalf of Defendant contacted Ms. Ensing proposing Ms. Ensing use her beauty influencer status to promote Defendant Sephora's products in a sponsored video.

22. On or about January 21, 2021, Ms. Ensing contracted with Defendant Sephora to provide "one (1) dedicated Sephora YouTube video." Among other provisions, Ms. Ensing was contractually obligated to provide the Defendant with the Video entitled, "10 Sephora Skin-Care Gems You Need In Your Life!!!", where she listed her favorite skincare products from the French retailer before making it available to the public—this was to allow "for brand review and approval." Ms. Ensing noted at the start of her YouTube video that she once worked for the retailer and loves Sephora. And in the description, Ms. Ensing wrote that the video was sponsored by Sephora, but "as always, all opinions are my own."

23. The contract contained a moral character clause, which provided that Defendant Sephora could, in its reasonable discretion, terminate the contract, if such clause were violated. Ms. Ensing specifically inquired about the purpose behind this clause because she had previously been criticized for her Christian and conservative values —she was told that it was not a problem and "would only ever be referenced in extreme situations such as violence or hate speech." Specifically, the clause states that Defendants Sephora and RewardStyle can terminate the project — and therefore not pay Ms. Ensing and require her to remove the video — if she is involved in any situation, past or present, that offends, insults, or causes public scandal.

24. On January 28, 2021, Ms. Ensing submitted the Video for the Defendants' review. The Defendants did not find any of the content—nor Ms. Ensing herself—objectionable. To the contrary, Defendant Sephora "loved [the] video."

25. On January 29, 2021, initial reprisals were sparked when Ms. Ensing posted the Sephora-sponsored YouTube video that had been arranged by third-party platform RewardStyle.

26. "Radical Justice," an anonymous Twitter user, began to falsely claim on the comments of the video that Ms. Ensing spread "hate and misinformation." On January 30, 2021, "Radical Justice" said, "I'm incredibly disappointed to see you are sponsoring people like that @AmandaEnsing she is spreading hate and misinformation." Other users also repeated these false claims and engaged in name-calling, derisive comments and extremely disruptive social media posts against Ms. Ensing.

27. Defendant Sephora immediately responded to the comments of "Radical Justice" on both Instagram and Twitter.

28. Four days after the post by the "Radical Justice" blogger, Defendant Sephora stated as follows: "We were recently made aware of concerning behavior by Ms. Ensing on her social platforms. Most recently, she made light of the violence and tragic loss of life at our nation's Capital last month. For this reason, we made the decision to cease all programming with her indefinitely, including having the video she created through an external vendor, taken down." As a result, Ms. Ensing was ostracized, belittled, disparaged, and received death threats based on a false claim that she made "light of violence and tragic loss of life".

29. Further, this false claim was repeated numerous times, including on Instagram, where Defendant Sephora has more than 20 million followers, where the false claims spread quickly, and were picked up by national media outlets like *Insider* and *Teen Vogue*. The

defamatory claims have effectively driven Ms. Ensing from the beauty industry, depriving her of the network she had spent over a decade building from the ground up as an influencer. Ms. Ensing has been ostracized by other beauty companies and personalities in the industry as a direct result of Defendant's defamatory conduct.

30. These publications included several false and defamatory allegations concerning the company's decision to stop working with Ms. Ensing and the supposed reasons for this decision which were based on recklessly or intentionally false claims about Ms. Ensing's social media activity.

31. Defendants knew their defamatory statements were untrue and intentionally, willfully, and with malice disregarded the truth based on other statements Amanda Ensing made on social media explaining her statements.

32. First, Defendants accused Ms. Ensing of sharing content that was "not aligned with Sephora's values around inclusivity." The first allegation is a false statement of fact based on Defendants' own definition of "inclusivity." *See* https://www.sephora.com/beauty/diversity-and-inclusion (Defining inclusivity variously as "challeng[ing] racial bias," "supporting equity, justice, and inclusion," and "creating fair and anti-racist working environments") (last visited March 18, 2021). Therefore, this allegation conveyed that Ms. Ensing shared content supportive of racial bias and racist working environments and opposing equity, justice, and inclusion. Even a cursory review of Ms. Ensing's social media content reveals that she has never supported racism or bigotry. Indeed, as Defendants are well aware, Ms. Ensing herself is Latina and fights in her life against racism and bigotry.

33. Second, Defendants accused Ms. Ensing of "making light of the violence and tragic loss of life at our nation's Capital last month" on her social media platforms. This allegation is

8

also provably false. Contrary to Defendant's allegation, Ms. Ensing never made light of the shocking violence at the Capitol, whether on social media or elsewhere. Even a cursory review of her social media content establishes that she was unequivocally opposed to the violence and loss of life that occurred during this national tragedy. For example, on 11/12/2020 she retweeted, "No one, literally no one, should be attacked or have to apologize for who they have voted for . . ." Again on 11/15/2020 she tweeted her belief in ". . . equality and love for EVERYONE." On January 30, 2021, she reiterated this statement on a video on Instagram.com stating, "I have never condoned violence, I never will."

34. Third, tDefendants claimed that Ms. Ensing was an inappropriate partner for Defendants' brand. The third allegation is merely a not-so-subtle reformulation of the first allegation and is also provably false and defamatory.

35. Fourth, Defendant Yeh also made false and defamatory statements about Ms. Ensing. In her official capacity as Chief Marketing Officer, she sent an email to "All members of our Sephora Employee community" informing Defendant Sephora's numerous employees of their decision to end their relationship with Ms. Ensing writing, "she used her platform to share or highlight racially insensitive and discriminatory language, and made light of the violence at our nation's Capital last month".

36. In summary, Defendants alleged that Ms. Ensing's content was supportive of racism and bigotry and suppressed her point of view on pretextual grounds.

37. A communication is defamatory if it tends to so harm the reputation of another as to lower her in the estimation of the community or to deter third persons from associating or dealing with her. Restatement (2d) Torts § 559 (1977). This precisely describes the harm to Ms. Ensing's reputation caused by Defendants' false allegations.

38. First, Defendants' false allegations almost immediately caused third persons to stop associating with her. For example, Ms. Ensing's YouTube channel lost around 1400 subscribers on January 29 alone.

39. Second, Defendants' false allegations have had and continue to impose a far-reaching impact on Ms. Ensing's reputation. Defendant Sephora is a dominant force in the beauty industry. Whether or not the false allegations are true, no company that has a current relationship with the Defendant, or hopes to cultivate one in the future, will risk working with Ms. Ensing. Thus, Defendant's false allegations have destroyed a major source of Ms. Ensing's income and will cause her substantial harm.

40. The actual damage done to Ms. Ensing due to the Defendant's false statements is already and foreseeably is immense. As a multi-national retailer with over $10 billion in revenue, over 2,600 store locations and over 20.6 million Instagram followers, the global reach and impact Defendant Sephora's defamatory statements about Ms. Ensing have had and will continue to have is immense.

41. Also disturbing is that Defendants never issued a retraction and apology after sabotaging Ms. Ensing and causing her devastating harm. Defendants have made no efforts to remedy the damages caused to Ms. Ensing and have caused great irreparable harm. This lawsuit implicates significant monetary damages, including without limitation, punitive damages.

42. Specifically, Ms. Ensing has suffered significant psychological and emotional harm as a result of the defamatory statements made by the Defendants. Ms. Ensing has been the subject of persistent hatred and ridicule on social media following these defamatory statements.

43. Following the defamatory statements, users of Twitter, Instagram, YouTube, and other social media sites have harassed, bullied, and falsely reported Ms. Ensing's pages in order to drive her off of social media.

*44.* In part they were successful. Her Twitter account has been suspended and one user wrote, "*I'm so happy we ran Amanda Ensing off social media, [Instagram] next girlies"-Louis (@louislosesitall), March 2, 2021.* Others noted how they had reported her Twitter or Instagram multiple times per day in order to get her banned from the social media sites.

45. In ruining Ms. Ensing's beauty influencer career, Defendants have caused Ms. Ensing not only the loss of her primary source of income but also erased a decade of personal work, ingenuity, and determination in making a name for herself in the beauty industry. Defendant's actions have caused the loss of the future of her brand as well. All of this has taken a significant emotional and mental toll on Ms. Ensing.

46. In discussing the effect of defamatory statements made on the internet, Dean Smolla observed that "once the proliferation of the falsehood is unleashed, it often can never be contained." Rodney A. Smolla, *Law of Defamation* § 1:27.50 (2d ed.) (footnotes omitted). The poisonous radiation continues to damage Ms. Ensing long after the fires from the original explosion are extinguished. "Retractions and rewrites never fully catch up with, repair, or remedy the reputational damage." *Id.*

## FIRST CAUSE OF ACTION

**By Ms. Ensing Against Defendants Sephora, and Does for Defamation (Libel)**

47. Ms. Ensing realleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

48. Defendants defamed Ms. Ensing by publicly stating Ms. Ensing made light of the deaths at Capitol Building and that Ms. Ensing used her platform to highlight racially insensitive and discriminatory language.

49. Defendants made the defamatory statements publicly across social media.

50. The defamatory statements concerned Ms. Ensing, as they referenced her by name. The average reader understood the statements to be about Ms. Ensing.

51. Defendants published the defamatory statements. They communicated the defamatory statements to someone other than Ms. Ensing, and Defendants intended that the defamatory statements be distributed widely—both nationally and internationally to an audience of tens of millions. The defamatory statements were false, substantially untrue, and materially false. *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999).

52. These defamatory statements were widely published to Defendant Sephora's audience of over 20-million social media followers. Defendant Sephora's statements held Ms. Ensing up to public hatred, contempt and ridicule. *Stones River Motors, Inc. v. Mid-South Pub. Co.*, 651 S.W.2d 713, 719 (Tenn. Ct. App. 1983).

53. When Defendants made the defamatory statements, they knew that they were false and acted willfully, intentionally, or with malice. *West v. Media Gen. Convergence, Inc.*, 53 S.W.3d 640, 647 (Tenn. 2001).

54. Defendants had no applicable privilege or legal authorization to publish the defamatory statements. The defamatory statements were a substantial factor in causing Ms. Ensing to suffer economic and non-economic loss, in an amount to be proven at trial. *McGuffey v. Belmont Weekday Sch.*, No. M2019-01413-COA-R3-CV, 2020 Tenn. App. LEXIS 242, at *48 (Tenn. Ct. App. May 27, 2020).

WHEREFORE, Plaintiff Amanda Ensing states that she has been damaged and prays judgment against Defendants in a sum in excess of Seventy-Five Thousand Dollars ($75,000.00), as well as punitive damages which is just, fair, and adequate under the circumstances and for her costs herein expended, and or such other relief as the Court deems just.

## SECOND CAUSE OF ACTION

### By Ms. Ensing Against Defendants Deborah Yeh, Sephora, and Does For Defamation (Libel)

55. Ms. Ensing realleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

56. Defendants made the Defamatory Statements.

57. Defendant Yeh is being sued in both her individual and representative capacity.

58. While in the act of defaming Ms. Ensing, Defendant Yeh was acting in her official capacity as a representative of Defendant Sephora. Defendant Yeh serves as a corporate officer of Defendant Sephora.

59. Defendant Yeh defamed Ms. Ensing stating "she used her platform to share or highlight racially insensitive and discriminatory language, and made light of the violence at our nation's capital last month."

60. The defamatory statements concerned Ms. Ensing, as they referenced her by name. The average reader understood the statements to be about Ms. Ensing.

61. Defendants published the defamatory statements. They communicated the defamatory statements to someone other than Ms. Ensing, and Defendants intended that the defamatory statements be distributed widely—both nationally and internationally.

62. The publication of this statement was broad, this statement was conveyed to "All members of our Sephora employee community" widely defaming Ms. Ensing and leading to Defendant Does further disseminating the defamatory statements.

63. Defendant Yeh's statements held Ms. Ensing up to public hatred, contempt and ridicule. *Stones River Motors, Inc. v. Mid-South Pub. Co.*, 651 S.W.2d 713, 719 (Tenn. Ct. App. 1983).

64. The defamatory statements were false, substantially untrue, and materially false. *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999).

65. When Defendants made the defamatory statements, they knew that they were false or acted with willful and intentional disregard of the truth or falsity of the statements. *West v. Media Gen. Convergence, Inc.*, 53 S.W.3d 640, 647 (Tenn. 2001).

66. Defendants had no applicable privilege or legal authorization to publish the defamatory statements. The defamatory statements were a substantial factor in causing Ms. Ensing to suffer economic and non-economic loss, in an amount to be proven at trial. *Revis v. McClean*, 31 S.W.3d 250, 252-53 (Tenn. Ct. App. 2000); *McGuffey v. Belmont Weekday Sch.*, No. M2019-01413-COA-R3-CV, 2020 Tenn. App. LEXIS 242, at *48 (Tenn. Ct. App. May 27, 2020).

WHEREFORE, Plaintiff Amanda Ensing states that she has been damaged and prays judgment against Defendants in a sum in excess of Seventy-Five Thousand Dollars ($75,000.00), as well as punitive damages which is just, fair, and adequate under the circumstances and for her costs herein expended, and for such other relief as the Court deems just.

# THIRD CAUSE OF ACTION

**By Ms. Ensing Against All Defendants for False Light Invasion of Privacy**

67. Ms. Ensing realleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

68. Defendants, acting with willful, intentional, or malicious disregard, placed Ms. Ensing in a false light. *West v. Media Gen. Convergence, Inc.*, 53 S.W.3d 640, 642 (Tenn. 2001). As a direct and proximate result of Defendants' actions, they caused the Defamatory Statements to be placed before the public.

69. Defendants' placement of Ms. Ensing in a false light was highly offensive to a reasonable person. No reasonable person could tolerate being publicly accused of hate speech and racism.

70. The defamatory statements were a substantial factor in causing Ms. Ensing to suffer economic and non-economic loss, in an amount to be proven at trial.

71. When Defendants made the defamatory statements, they knew that they were false and acted willfully, intentionally, or with malice. *West v. Media Gen. Convergence, Inc.*, 53 S.W.3d 640, 647 (Tenn. 2001).

WHEREFORE, Plaintiff Amanda Ensing states that she has been damaged and prays judgment against Defendants in a sum in excess of Seventy-Five Thousand Dollars ($75,000.00), as well as punitive damages which is just, fair, and adequate under the circumstances and for her costs herein expended, and for such other relief as the Court deems just.

# FOURTH CAUSE OF ACTION

**By Ms. Ensing Against All Defendants for Common Law and Statutory Tortious Interference with Contractual Relations**

72. Ms. Ensing realleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

73. Ms. Ensing is well-established in the beauty and lifestyle influencer space. Her relationships with beauty and lifestyle companies included Marc Jacobs, Fresh Beauty, Benefit Cosmetics, Nars, Murad, Kiehls, Smashbox, BeautyBlender, Farsali, Buxom, Bumble & Bumble, Bite Beauty, Clinique, Dyson, Estee Lauder, GlamGlow, TooFaced, and Savage x Fenty. These relationships involved contractual terms and transactions.

74. Defendant knew of these relationships. Defendant intentionally interfered with and induced the termination of these existing relationships by publishing the defamatory statements. *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002).

75. By publishing the defamatory statements and placing Ms. Ensing in a false light, Defendants knew that would interfere with Ms. Ensing's business.

76. Had it not been for Defendants' interference, Ms. Ensing would have continuing business relationships. Defendants' interference used wrongful means, as they defamed Ms. Ensing.

77. As a direct and proximate result of Defendants' interference, Ms. Ensing suffered damages, in an amount to be proven at trial.

78. When Defendants made the defamatory statements, they knew that they were false and acted willfully, intentionally, or with malice. *West v. Media Gen. Convergence, Inc.*, 53 S.W.3d 640, 647 (Tenn. 2001).

WHEREFORE, Plaintiff Amanda Ensing states that she has been damaged and prays judgment against Defendants in a sum in excess of Seventy-Five Thousand Dollars ($75,000.00), as well as punitive damages which is just, fair, and adequate under the circumstances and for her costs herein expended, and for such other relief as the Court deems just. Further, under Tennessee Code Annotated § 47-50-109 Ms. Ensing is entitled to recover treble damages.

### FIFTH CAUSE OF ACTION

**By Ms. Ensing Against All Defendants for Tortious Interference
with Prospective Business Relationship**

79. Ms. Ensing realleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

80. Ms. Ensing was well-established in the beauty and lifestyle influence space. Her prospective relationships with beauty companies included Marc Jacobs, Fresh Beauty, Benefit Cosmetics, Nars, Murad, Kiehls, Smashbox, BeautyBlender, Farsali, Buxom, Bumble & Bumble, Bite Beauty, Clinique, Dyson, Estee Lauder, GlamGlow, TooFaced, Savage x Fenty.

81. Ms. Ensing had the opportunity to enter into business relationships with all the foregoing companies—and a reasonable expectancy of entering those relationships.

82. These prospective relationships would have involved future lucrative beauty influence opportunities. Defendants knew of these relationships.

83. Defendants intentionally interfered with these prospective relationships. By publishing the defamatory statements and placing Ms. Ensing in a false light, Defendants knew that would interfere with Ms. Ensing's business. *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002).

17

84. Had it not been for Defendants' interference, Ms. Ensing would have entered into the prospective business relationships. Defendants' interference used wrongful means, as they defamed Ms. Ensing.

85. As a direct and proximate result of Defendants' interference, Ms. Ensing suffered damages, in an amount to be proven at trial.

86. Defendants acted intentionally, willfully, or with malice in defaming and tortiously interfering with Ms. Ensing's business relationship. *West v. Media Gen. Convergence, Inc.*, 53 S.W.3d 640, 647 (Tenn. 2001).

WHEREFORE, Plaintiff Amanda Ensing states that she has been damaged and prays judgment against Defendants in a sum in excess of Seventy-Five Thousand Dollars ($75,000.00), as well as punitive damages which is just, fair, and adequate under the circumstances and for her costs herein expended, and for such other relief as the Court deems just.

## SIXTH CAUSE OF ACTION

**By Ms. Ensing Against All Defendants for Conspiracy to Defame**

87. Ms. Ensing realleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

88. At all times relevant to this matter there existed a combination of two or more persons, such combination comprising Defendant Sephora, and certain of Sephora's employees, agents, independent contractors, and other persons acting on behalf of Defendant Sephora.

89. The persons party to this combination, and each of them, sought to injure Ms. Ensing's reputation, existing business relationships, prospective business relationships, ability to earn an income, and ability to engage in her current and future lines of business, publish false and

18

Case 3:21-cv-00421   Document 1   Filed 05/27/21   Page 18 of 20 PageID #: 18

defamatory statements about Ms. Ensing. Further, such persons sought to tortiously interfere with Ms. Ensing's prospective business relations.

90. The parties to the conspiracy, and each of them, reached a meeting of the minds on the object of the conspiracy.

91. In pursuance of the objects of the conspiracy, Defendant Sephora and Defendant Yeh published false and defamatory statements about Ms. Ensing and tortuously interfered with Ms. Ensing's prospective business relations.

92. As a direct and proximate result of the conspiracy, Ms. Ensing suffered damages in an amount to be proved at trial.

93. Defendants acted intentionally, willfully, or with malice in conspiring to and defaming Ms. Ensing. *West v. Media Gen. Convergence, Inc.*, 53 S.W.3d 640, 647 (Tenn. 2001).

WHEREFORE, Plaintiff Amanda Ensing states that she has been damaged and prays judgment against Defendants in a sum in excess of Seventy-Five Thousand Dollars ($75,000.00), as well as punitive damages which is just, fair, and adequate under the circumstances and for her costs herein expended, and for such other relief as the Court deems just.

## PRAYER FOR RELIEF

Ms. Ensing demands judgment against Defendants as follows:

i. An award of compensatory, special, punitive, and/or treble damages in appropriate amounts to be established at trial;

ii. Injunctive relief prohibiting the publication or republication of the defamatory statements;

iii. An award of costs associated with this action;

iv. And such other and further relief as the Court may deem just and proper.

19

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

s/ Timothy L. Warnock
Timothy L. Warnock (12844)
Katharine R. Klein (19336)
Riley Warnock & Jacobson, PLC
1906 West End Avenue
Nashville, TN 37203
(615) 320-3700
(615) 320-3737 (facsimile)
twarnock@rwjplc.com
kklein@rwjplc.com

*Attorneys for Defendant*