# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| AMANDA ENSING,<br><br>                           Plaintiff,<br>    vs.<br><br>SEPHORA USA, INC., DEBORAH YEH, and<br>DOES 1-1000,<br><br>                       Defendants. | Civil Action No. 3:21-cv-0421<br><br>Judge William L. Campbell<br>Magistrate Judge Jeffrey S. Frensley |

---

**MEMORANDUM OF SEPHORA USA, INC. AND DEBORAH YEH
IN SUPPORT OF THEIR MOTION TO
(1) DISMISS OR TRANSFER PURSUANT TO RULES 12(B)(2) AND 12(B)(3); OR
(2) DISMISS PURSUANT TO RULE 12(B)(6); OR
(3) DISMISS PURSUANT TO TENNESSEE PUBLIC PARTICIPATION ACT**

---

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................. 2

ARGUMENT .................................................................................................................. 3

THERE IS NO PERSONAL JURISDICTION IN TENNESSEE .................................................. 3

    A.    Social Media Posts and Widely Distributed Emails Cannot Establish
Specific Jurisdiction over Sephora and Ms. Yeh .................................................... 5

    B.    Sephora's Retail Store Operations are Irrelevant to Specific Jurisdiction .............. 6

THE MIDDLE DISTRICT OF TENNESSEE IS NOT A PROPER VENUE ............................. 7

MS. ENSING'S COMPLAINT FAILS TO STATE A CLAIM .................................................. 8

    A.    Ms. Ensing Has Failed to Plausibly Allege Actual Malice ..................................... 9

    B.    Ms. Ensing's Defamation and False Light Claims Should Be Dismissed
Because the Alleged Defamatory Statements are Protected Opinion Based
on Disclosed Facts and Incapable of Conveying Defamatory Meaning .............. 12

        1.    Statement #1 is Not Actionable ............................................................. 13
        2.    Statements #2 And #3 Are Not Actionable ............................................. 14
        3.    Statement #4 Is Not Actionable ............................................................. 15

    C.    Ms. Ensing's False Light Claims Should Be Dismissed ...................................... 16

    D.    Ms. Ensing's Tortious Interference With Contractual Relations Claim
Should Be Dismissed .......................................................................................... 17

    E.    Plaintiff's Tortious Interference with Prospective Business Relationship
Claim Should Be Dismissed ............................................................................... 18

    F.    Ms. Ensing's Conspiracy Claim Should Be Dismissed ....................................... 20

UNDER THE TENNESSEE PUBLIC PARTICIPATION ACT, MS. ENSING MUST
NOW PRESENT A *PRIMA FACIE* CASE FOR EVERY ELEMENT OF HER CLAIMS ........ 21

CONCLUSION ............................................................................................................. 25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................................9, 18

*Bird v. Parsons*, 289 F.3d 865 (6th Cir. 2002) ...................................................................................4

*Black v. Dixie Consumer Prods. LLC*, 835 F.3d 579 (6th Cir. 2016)............................................24

*Blessing v. Chandrasekhar*, 988 F.3d 889 (6th Cir. 2021) ...........................................................5, 6

*Bristol-Myers Squibb Co. v. Sup. Ct.*, 137 S. Ct. 1773 (2017) ....................................................4, 7

*Brown v. Christian Bros. Univ.*, 428 S.W.3d 38 (Tenn. Ct. App. 2013) .......................................20

*Caranchini v. Peck*, 355 F. Supp. 3d 1052 (D. Kan. 2018) .....................................................23, 24

*Cataldo v. U.S. Steel Corp.*, 676 F.3d 542 (6th Cir. 2012)............................................................9

*Clark v. E! Ent. Television, LLC*, 60 F. Supp. 3d 838 (M.D. Tenn. 2014)...................................10

*Clark v. Viacom Int'l Inc.*, 617 Fed. App'x 495 (6th Cir. 2015) ...................................................10

*Compuware Corp. v. Moody's Investors Servs., Inc.*, 499 F.3d 520 (6th Cir. 2007) ..........9, 12, 15

*Cook v. Greenleaf Twp., Michigan*, No. 20-1985, 2021 WL 2433444 (6th Cir. June 15, 2021) ..21

*Cross v. Rodgers*, No. 3:16-cv-01128, 2017 WL 3237623 (M.D. Tenn. July 31, 2017) ............5, 6

*Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863 (1994) ..............................................24

*FireClean, LLC v. Tuohy*, No. 1:16-cv-0294, 2016 WL 3952093 (E.D. Va. July 21, 2016) ..........6

*First of Mich. Corp. v. Bramlet*, 141 F.3d 260 (6th Cir. 2015) ......................................................8

*Freeman Mgmt. Corp. v. Shurgard Storage Ctrs., LLC*,
461 F. Supp. 2d 629 (M.D. Tenn. 2006)..................................................................................19

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974) .......................................................................12

*Godin v. Schenks*, 629 F.3d 79 (1st Cir. 2010) ......................................................................22, 24

*Goodyear Dunlop Tires Ops., S.A., v. Brown*, 564 U.S. 915 (2011) ..............................................4

*Harte-Hanks Commc'ns., Inc. v. Connaughton*, 491 U.S. 657 (1989) .........................................11

*HVLPO2, LLC v. Oxygen Frog, LLC*, 187 F. Supp. 3d 1097 (D. Neb. 2016)................................6

ii

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)........................................................................4

*Intera Corp. v. Henderson*, 428 F.3d 605 (6th Cir. 2005) ...........................................................4

*Isaac v. Life Investors Ins. Co. of Am.*, 749 F. Supp. 855 (E.D. Tenn. 1990)..............................24

*Kelly v. Int'l Capital Res., Inc.*, 231 F.R.D. 502 (M.D. Tenn. 2005) ...........................................4

*Lemelson v. Bloomberg LP*, 253 F. Supp. 3d 333 (D. Mass. 2017)..............................................11

*Levy v. Franks*, 159 S.W.3d 66 (Tenn. Ct. App. 2004) ...............................................................20

*Liberty Lobby, Inc. v. Anderson*, 746 F.2d 1563 (D.C. Cir. 1984)
    (abrogated on other grounds) ..........................................................................11, 13, 15

*McPherson v. Vignobles Sullivan, LLC*,
    No. 3:20-cv-00384, 2020 WL 7624173 (M.D. Tenn. Dec. 22, 2020) (Campbell, J.)..................16

*Moore v. Cecil*, 488 F. Supp. 3d 1144 (N.D. Ala. 2020) ...............................................................6

*Myers v. Pickering Firm, Inc.*, 959 S.W.2d 152 (Tenn. Ct. App. 1997)........................................10

*Nandigam Neurology, PLC v. Beavers*, No. M202000553COAR3CV, 2021 WL
    2494935 (Tenn. Ct. App. June 18, 2021)...............................................................................23

*Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*, 951 F.3d 952 (8th Cir. 2020) ..................10

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) ..................................................................9

*U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963 (9th Cir. 1999) .....23

*Personal Comp. Sys., Inc. v. C. Knox, Inc.*,
    No. 3:11-cv-374, 2012 WL 1108245 (E.D. Tenn. Mar. 30, 2012) ..........................................19

*Phantom Touring, Inc. v. Affiliated Publ'ns*, 953 F.2d 724 (1st Cir. 1992) ..................................12

*Preferred Capital, Inc. v. Sarasota Kennel Club, Inc.*, 489 F.3d 303 (6th Cir. 2007) .................24

*Regents Health Resources, Inc. v. Advanced Diagnostic Imaging, Inc.*,
    No. 3:11–656, 2011 WL 5042056 (M.D. Tenn. Oct. 24, 2011) ...............................................7

*Revis v. McClean*, 31 S.W.3d 250 (Tenn. Ct. App. 2000)..................................................... *passim*

*Seaton v. Tripadvisor LLC*, 728 F.3d 592 (6th Cir. 2013)......................................................12, 19

*Secured Fin. Sols., LLC v. Winer*,
    No. M2009-00885, 2010 WL 334644 (Tenn. Ct. App. Jan. 28, 2010)....................................16

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010) ......21, 22, 23, 24

iii

*Shelter Mut. Ins. Co. v. Bissell Homecare, Inc.*,
No. 3:20-CV-00813, 2021 WL 1663585 (M.D. Tenn. Apr. 28, 2021)........................................2

*Shutler v. Dunkin' Brands, Inc.*,
No. 3:14–cv–02048, 2015 WL 3544450 (M.D. Tenn. May 29, 2015) ........................................7

*St. Amant v. Thompson*, 390 U.S. 727 (1968).................................................................................10

*Stinson v. Dalton*, No. 08-2076, 2009 WL 10664880 (W.D. Tenn. Jan. 29, 2009).......................19

*Stones River Motors, Inc. v. Mid-South Publ'g Co., Inc.*,
651 S.W.2d 713 (Tenn. Ct. App. 1983) .............................................................................12, 16

*Tah v. Global Witness Publ'g, Inc.*, 991 F.3d 231 (D.C. Cir. 2021) .............................................12

*Theunissen v. Matthews*, 935 F.2d 1454 (6th Cir. 1991) ................................................................4

*Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691 (Tenn. 2002) .........................18, 19, 20

*Walden v. Fiore*, 571 U.S. 277 (2014)............................................................................................5

*Walker v. Armco Steel Corp.*, 446 U.S. 740 (1980)........................................................................24

*Weidlich v. Rung*, No. M2017-00045, 2017 WL 4862068 (Tenn. Ct. App. Oct. 26, 2017)..........14

*West v. Media Gen. Convergence, Inc.*, 53 S.W.3d 640 (Tenn. 2001) .............................................9

*Whitehardt, Inc. v. McKernan*,
No. 3:15-cv-01307, 2016 WL 4091626 (M.D. Tenn. Aug. 2, 2016)................................17, 18

*Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084 (6th Cir. 2016) .................................................21, 22

*Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788 (6th Cir. 2012) .................................................9

*Young v. New Haven Advocate*, 315 F.3d 256 (4th Cir. 2002) ........................................................6

**Statutes**

28 U.S.C. § 1391(b) ........................................................................................................................8

28 U.S.C. § 1406(a) ....................................................................................................................7, 8

Tenn. Code Ann. § 20-17-102 .................................................................................................21, 23

Tenn. Code Ann. §§ 20-17-104 .....................................................................................................23

Tenn. Code Ann. § 20-17-105 .....................................................................................21, 23, 24, 25

Tenn. Code Ann. § 20-17-109 .......................................................................................................23

iv

**Other Authorities**

Restatement (2d) of Torts § 566, cmt. c........................................................13, 14, 15, 16

Restatement (2d) of Torts § 652D, cmt. a.................................................................16

4851-0629-9376

# INTRODUCTION

This lawsuit constitutes an abuse of the legal process. It seeks to use a defamation lawsuit, impermissibly filed in Tennessee, to deny California-based beauty retailer Sephora USA, Inc. ("Sephora") and its Chief Marketing Officer Deborah Yeh exactly the rights of free expression and association plaintiff Amanda Ensing claims for herself. Not surprisingly, it fails as a matter of law right at the outset.

*First*, the case has no legitimate connection to Tennessee. Although Ms. Ensing lives here, ample case law in this Circuit and elsewhere deems this insufficient for filing a claim here, particularly where, as in this case, no part of Defendants' conduct is alleged to have targeted, or did target, this state. This makes both jurisdiction and venue improper.

*Second*, Ms. Ensing's substantive allegations fail on multiple grounds. The Complaint does not plausibly allege that Sephora and Ms. Yeh acted with "actual malice"—a critical requirement for all defamation-related claims by the kind of public figure Ms. Ensing claims to be. Further, the statements Ms. Ensing alleges were defamatory were subjective expressions of opinion, which all readers were free to evaluate and either accept or reject merely by reviewing Ms. Ensing's social media posts themselves, reaching their own conclusions. Just as the law allows Ms. Ensing to express her opinions freely for others to judge, so too it allows Defendants to espouse opinions of their own and choose not to do business with Ms. Ensing as a result.

*Third*, Ms. Ensing has run headlong into the new Tennessee Public Participation Act ("TPPA"), an anti-Strategic Lawsuits Against Public Participation ("anti-SLAPP") statute. Because this action relates to free speech and free association, the TPPA requires the claims be dismissed with prejudice unless Ms. Ensing presents a *prima facie* case for every essential element of her claims. Ms. Ensing's failure even to *allege* sufficient facts for her claims, let alone offer evidence to support them, dooms this case from the start and requires dismissal.

4851-0629-9376

# BACKGROUND

Ms. Ensing claims to be a social media "influencer," with more than a million followers, who makes content on social media platforms relating to beauty and make-up products and techniques. (Compl. ¶ 16.) Sephora operates online and physical stores that sell beauty and make-up products. (*Id*. ¶ 9.) Ms. Yeh—who is inexplicably singled out for attack in Ms. Ensing's Complaint—is Sephora's Chief Marketing Officer. (*Id*. ¶ 10.)

In early 2021, Ms. Ensing contracted with a third-party to create a video promoting products sold at Sephora. (Compl. ¶¶ 22–25.)[1] Ms. Ensing filmed the video and posted it on her social media accounts on January 29, 2021. (*Id*. ¶ 25.) This sparked a backlash, as Sephora immediately received numerous complaints through its social media channels about partnering with Ms. Ensing, highlighting among other things her stance on a variety of controversial topics. (*Id*. ¶ 26.)

Specifically, Ms. Ensing received widespread criticism for her posts about the validity of the 2020 election, the tragic events at the U.S. Capitol on January 6, 2021, and various equity and inclusion issues. Ms. Ensing herself acknowledges many of these social media criticisms in her Complaint. Among those at issue was a post of a photo of former President Donald Trump on the morning of January 6, 2021, to which she added the caption: "It will be Biblical." (Compl. ¶ 18.) Later the same day as the Capitol events were unfolding, Ms. Ensing opined that: "[t]here's not enough popcorn in the world for what's about to happen." (*Id*.)

Ms. Ensing alleges that her "popcorn" comment was supposedly "twist[ed]" by the social

---

[1] For its Rule 12(b)(2) and (b)(3) motions, Sephora may rely on declarations inconsistent with the allegations of the Complaint. *See, e.g.*, *Shelter Mut. Ins. Co. v. Bissell Homecare, Inc.*, No. 3:20-CV-00813, 2021 WL 1663585, at *3 (M.D. Tenn. Apr. 28, 2021) (describing use of declarations in Rule 12(b)(2) analysis). Sephora neither asks nor needs the Court to rely on any declarations to decide its motion under Rule 12(b)(6) and the TPPA.

4851-0629-9376

media world as condoning violence.  As a result, she found herself "clarifying" that it referred only to "the amount of corruption about to be revealed in our government."  (Compl. ¶¶ 18, 20.) As the social media world remained unmollified, she issued a further "clarification" to her audience, disputing its view that she was condoning violence at the Capitol, insisting this "was not [her] intention," and reiterating her claim that she was "referring to corruption."  (*Id.* ¶ 20.)

When Sephora later became aware of Ms. Ensing's posts, and the controversy they had spawned, it requested that she take down the video in which she advertised products sold at Sephora and sought to dissociate from her.  (Compl. ¶ 23.)  When asked its reasons, Sephora referenced her posts and the complaints it had received (*id.* ¶¶ 27–28):

1. "Ms. Ensing [was] sharing content that was 'not aligned with Sephora's values around inclusivity.'"  (*Id.* ¶ 32.)
2. "Ms. Ensing [was] 'making light of the violence and tragic loss of life at our nation's Capital [*sic*] last month.'"  (*Id.* ¶ 33; *see also id.* ¶¶ 27–28.)
3. "Ms. Ensing was an inappropriate partner for Defendants' brand."  (*Id.* ¶ 34.)
4. Ms. Ensing "used her platform to share or highlight racially insensitive and discriminatory language, and made light of the violence at our nation's Capital [*sic*] last month."  (*Id.* ¶ 35.)

Ms. Yeh shared the last of these statements with Sephora employees by an internal email.  (*Id.*)

Based on these four statements, none of which was made in or directed to Tennessee, Ms. Ensing is suing Defendants here for defamation, false light invasion of privacy, tortious interference with contractual and prospective business relations, and civil conspiracy to defame. (Compl. ¶¶ 47–93.) Ms. Ensing purports to sue Ms. Yeh in both her individual capacity and her capacity as a representative of Sephora.  (*Id.* ¶¶ 57–58.)

## ARGUMENT

## THERE IS NO PERSONAL JURISDICTION IN TENNESSEE.

Tennessee has no connection to the allegations and claims in this action.  Ms. Ensing lives here, but that connection does not suffice for personal jurisdiction over Defendants.

3

More specifically, upon a Rule 12(b)(2) motion, the defendants should be dismissed unless the plaintiff can make out a *prima facie* case of personal jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991); *Kelly v. Int'l Capital Res., Inc.*, 231 F.R.D. 502, 509 (M.D. Tenn. 2005). Personal jurisdiction over a defendant does not exist unless the defendant is amenable to service of process under the forum state's long-arm statute *and* the exercise of personal jurisdiction would not deny the defendant due process. *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002). Tennessee's long-arm statute has been deemed coextensive with the constitutional due process limits. *Intera Corp. v. Henderson*, 428 F.3d 605, 616 (6th Cir. 2005). For this reason, the Court need consider only whether exercising jurisdiction over Sephora and Ms. Yeh is consistent with federal due process requirements. *See id.*

It is not. Neither defendant has the "minimum contacts" with Tennessee necessary to avoid offending traditional notions of fair play and substantial justice. *See, e.g.*, *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The "minimum contacts" standard must be met through either "general" jurisdiction or "specific" jurisdiction. *Bristol-Myers Squibb Co. v. Sup. Ct.*, 137 S. Ct. 1773, 1779–80 (2017). Neither exists here.

Certainly, neither Sephora nor Ms. Yeh is "at home" in Tennessee, and they are not therefore subject to its general jurisdiction. (Compl. ¶ 9 (alleging Sephora is incorporated in Michigan and has principal place of business in California); Yeh Decl. ¶ 9 (Yeh domiciled in California)); *see, e.g.*, *Goodyear Dunlop Tires Ops., S.A., v. Brown*, 564 U.S. 915, 924 (2011). Ms. Ensing appears to concede as much in her Complaint. Its jurisdictional allegations use the language of specific jurisdiction only. (*See* Compl. ¶¶ 13–14.)

But this Court also lacks specific personal jurisdiction over Sephora and Ms. Yeh. Modern specific jurisdiction principles require plaintiffs to show that defendants' allegedly

4

improper social media posts directly targeted Tennessee. Here, Ms. Ensing cannot meet this standard for either Defendant.

A. **Social Media Posts and Widely Distributed Emails Cannot Establish Specific Jurisdiction over Sephora and Ms. Yeh.**

The Sixth Circuit, among other courts, has expressly ruled that allegedly defamatory statements made over social media and the internet pose unique challenges, requiring courts to replace traditional specific jurisdiction tests with an "effects test." *See, e.g.*, *Blessing v. Chandrasekhar*, 988 F.3d 889, 905 (6th Cir. 2021) (recognizing plaintiffs could not "point to a single case in which a court extended personal jurisdiction based on a defendant's allegedly tortious postings on social media"); *see also Cross v. Rodgers*, No. 3:16-cv-01128, 2017 WL 3237623, at *4 (M.D. Tenn. July 31, 2017) (explaining that "social media websites do not lend themselves to the sliding scale test" for internet-based specific jurisdiction).[2] Under the effects test, Ms. Ensing must establish *both* (1) that Sephora and Ms. Yeh intentionally issued a tortious statement that was expressly aimed for dissemination in Tennessee, *and* (2) that the brunt of the effects of the actions was felt within Tennessee. *Cross*, 2017 WL 3237623, at *4.

Together, these requirements mean that "injury to a forum resident is not enough under this test, and personal jurisdiction is not found in the absence of 'something more' to demonstrate that the defendant specifically directed his activity to the forum state." *Id.*; *see also Walden v. Fiore*, 571 U.S. 277, 290 (2014) ("The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the

---

[2] In *Blessing*, the Sixth Circuit noted that every other circuit court to address this issue has decided to apply the effects test. 988 F.3d at 905 n.15 (*citing, e.g.*, *Shrader v. Biddinger*, 633 F.3d 1235, 1241 (10th Cir. 2011) ("[P]osting allegedly defamatory comments or information on an internet site does not, without more, subject the poster to personal jurisdiction wherever the posting could be read (and the subject of the posting may reside).") and *Johnson v. Arden*, 614 F.3d 785, 797 (8th Cir. 2010) (similar)).

5

forum in a meaningful way.").  For suits based on communications, as this one is, personal

jurisdiction "is absent when the communication was not specifically directed at the forum state."

*Blessing*, 988 F.3d at 905.[3]

Ms. Ensing has not alleged—and cannot prove—that Sephora or Ms. Yeh's statements

were specifically directed at Tennessee.  In fact, Ms. Ensing alleges just the opposite—that the

four statements at issue were intended to be and were disseminated broadly.  (*See, e.g.*, Compl.

¶¶ 52, 62.)  As in the Sixth Circuit's *Blessing* case, Ms. Ensing does not allege that Sephora took

any "affirmative steps to direct any communications to [plaintiff] or to anyone else in

[Tennessee]."  *See Blessing*, 988 F.3d at 906.  Likewise, there is no allegation that Sephora

"posted the [statements] hoping to reach [Tennessee] specifically as opposed to their [social

media] followers generally." *Id.*; *see also Cross*, 2017 WL 3237623 at *5 (noting that "the

comments at issue were posted for the entire Facebook audience on an international website").

Indeed, Ms. Ensing fails even to allege that Sephora knew she was a Tennessee resident.  Absent

facts to show the alleged statements were targeting Tennessee, those statements cannot create

personal jurisdiction here.  *Blessing*, 988 F.3d at 906.

## B.    Sephora's Retail Store Operations are Irrelevant to Specific Jurisdiction.

In a misguided attempt to establish jurisdiction, Ms. Ensing's Complaint points to

Sephora's general business in the state.  (Compl. ¶ 13.)  The Supreme Court has squarely

---

[3] Numerous courts outside of the Sixth Circuit have reached similar conclusions.  *See, e.g.*, *Young v. New Haven Advocate*, 315 F.3d 256, 263 (4th Cir. 2002) ("Otherwise, a person placing information on the Internet would be subject to personal jurisdiction in every State.") (quotations omitted); *HVLPO2, LLC v. Oxygen Frog, LLC*, 187 F. Supp. 3d 1097, 1110 (D. Neb. 2016) (no personal jurisdiction where no "evidence that the defendants sought to harm the plaintiff's reputation specifically with Nebraska residents"); *Moore v. Cecil*, 488 F. Supp. 3d 1144, 1157 (N.D. Ala. 2020) (finding no personal jurisdiction over tweets calling Roy Moore a pedophile because the defendant was not aiming the tweets at Alabama but instead at a larger audience); *FireClean, LLC v. Tuohy*, No. 1:16-cv-0294, 2016 WL 3952093, at *6 (E.D. Va. July 21, 2016) (similar).

rejected such grounds as insufficient for personal jurisdiction in *Bristol-Myers Squibb Co.*, 137

S.Ct. 1773. The Supreme Court emphasized that for specific jurisdiction to apply "the *suit* must

arise out of or relate to the defendant's contacts with the *forum*." *Id.* at 1780; (emphasis from

Court; quotations and other punctuation omitted; quoting *Daimler AG v. Bauman*, 571 U.S. 117,

118 (2014)); *see also Regents Health Resources, Inc. v. Advanced Diagnostic Imaging, Inc.*, No.

3:11–656, 2011 WL 5042056, at *3 (M.D. Tenn. Oct. 24, 2011) (same). When the suit arises out

of facts unrelated to the forum, "specific jurisdiction is lacking regardless of the extent of a

defendant's unconnected activities in the State." *Bristol-Myers Squibb*, 137 S.Ct. at 1781. The

Court criticized any focus on general connections to a forum state as "a loose and spurious form

of general jurisdiction" and affirmed that: "[f]or specific jurisdiction, a defendant's general

connections with the forum are not enough." *Id.*

Here, there is no allegation that Ms. Ensing's claims arise out of Sephora's retail store

operations in Tennessee. On the contrary, the allegations are expressly based on statements

neither from nor directed to nor made on behalf of those retail stores or to its Tennessee

customers. Sephora was communicating broadly, focusing on matters arising elsewhere. As a

result, Sephora's Tennessee stores are irrelevant to the jurisdictional analysis.

### THE MIDDLE DISTRICT OF TENNESSEE IS NOT A PROPER VENUE.

Just as this Court lacks personal jurisdiction over the Defendants, so too does the

Complaint fail to satisfy venue requirements, adding a further basis for dismissal.

On a Rule 12(b)(3) motion for improper venue, the plaintiff bears the burden of

establishing that venue is proper in this judicial district. *Shutler v. Dunkin' Brands, Inc.*, No.

3:14–cv–02048, 2015 WL 3544450, at *6 (M.D. Tenn. May 29, 2015). Unless the Court finds

that venue is proper, the case "shall" be dismissed or transferred to another district in which it

could have been brought. 28 U.S.C. § 1406(a). The choice between dismissal or transfer is left

7

to the Court's discretion.  *First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 262 (6th Cir. 2015).

Pursuant to 28 U.S.C. § 1391(b), venue is proper in only three places: (1) a judicial district in which any defendant resides; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred; or (3) any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.  Here, neither Sephora nor Ms. Yeh resides in the Middle District of Tennessee: Sephora is a citizen of Michigan and California, and Ms. Yeh is domiciled in California.  (Compl. ¶ 12; Yeh Decl. ¶ 9.) None of the events giving rise to the alleged claims occurred here.  Ms. Ensing's allegations involve social media postings and emails that Sephora made through its U.S. headquarters team, which is based in California and has a satellite office in New York.  (Yeh Decl. at ¶¶ 3–5.) Third, this Court does not have personal jurisdiction over Ms. Yeh or Sephora.  *See supra* at pp. 5–6.  Therefore, the Court should dismiss the Complaint pursuant to Rule 12(b)(3) for improper venue.

In the alternative, the Court should transfer venue under 28 U.S.C. § 1406(a) to the Northern District of California, where both Ms. Yeh and Sephora reside (Compl. ¶ 12; Yeh Decl. ¶¶ 8–9), and where the most substantial part of the events relating to the alleged defamatory statements took place (Yeh Decl. ¶¶ 3–5, 8–9).  Most of the facts and witnesses likely relevant to this claim are in California.  (Yeh Decl. ¶¶ 2–5, 8.)  Ms. Ensing has little to lose from such a transfer, given that her lead counsel is also located in California.  (*See* ECF Nos. 7, 8.)

## MS. ENSING'S COMPLAINT FAILS TO STATE A CLAIM.

Wherever Ms. Ensing's claims are ultimately adjudicated, they must be dismissed. Fundamentally, Ms. Ensing seeks to impose tort liability upon Sephora and one of its employees for expressing the same subjective opinion as many others concerning her public comments on various topics, including the attack on the U.S. Capitol.  Because her Complaint would burden

8

the very freedom of speech and association Ms. Ensing claims for herself, the law imposes numerous hurdles for such claims.  Ms. Ensing has not alleged plausible facts to overcome those hurdles or state any viable claims.

In general, to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 799 (6th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The plausibility standard demands "more than a sheer possibility that a defendant acted unlawfully."  *Iqbal*, 556 U.S. at 678.  Although the Court must accept properly pled factual allegations, it may disregard "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Id.*.  The Court may consider the pleadings and any documents referenced in and central to the allegations.  *E.g.*, *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 555 (6th Cir. 2012).

## A.     Ms. Ensing Has Failed to Plausibly Allege Actual Malice.

For more than half a century, at the express direction of the U.S. Supreme Court, courts have safeguarded free expression by requiring that public figures like Ms. Ensing plead and prove "actual malice" to bring any claims based on allegedly defamatory statements.[4]  *E.g.*, *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964).  As the Sixth Circuit has ruled, actual malice requires the defendant to have "made the statement with knowledge of its falsity or with reckless disregard of its truth."  *Compuware Corp. v. Moody's Investors Servs., Inc.*, 499 F.3d

---

[4] Each of Ms. Ensing's claims is subject to this requirement.  Tennessee has adopted the "actual malice" standard for false light claims by public figures, *West v. Media Gen. Convergence, Inc.*, 53 S.W.3d 640, 647 (Tenn. 2001), and federal courts routinely apply this standard to "other tort claims predicated on defamatory speech," which here includes Ms. Ensing's tortious interference claims.  *See, e.g.*, *Compuware Corp. v. Moody's Investors Servs., Inc.*, 499 F.3d 520, 530 (6th Cir. 2007) (actual malice requirement applies to tortious interference claims predicated on defamatory speech).

4851-0629-9376

520, 526 (6th Cir. 2007).  The key test is whether "the defendant in fact entertained serious doubts as to the truth of his publication."  *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). Actual malice must be alleged with plausible facts to survive a Rule 12(b)(6) challenge.  *See Clark v. Viacom Int'l Inc.*, 617 Fed. App'x 495, 509 n.3 (6th Cir. 2015); *Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*, 951 F.3d 952, 958 (8th Cir. 2020) (circuit courts have unanimously held actual malice subject to *Twombly/Iqbal* pleading standard).

Pleading actual malice is required whenever the plaintiff is a public figure, or when the speech at issue relates to a matter of public concern.  *Clark v. E! Ent. Television, LLC*, 60 F. Supp. 3d 838, 847 (M.D. Tenn. 2014).  Both apply here.  Ms. Ensing admits to being a public figure by alleging she is an "influencer" and "social media personalit[y]" who is "known" for her videos and has 1.4 million followers.  (Compl. ¶¶ 1, 16.)  The alleged defamatory statements, and Ms. Ensing's social media posts that prompted them, relate to matters of grave public concern—the January 6, 2021 attack on the U.S. Capitol and other high-profile matters. (*Id.* ¶¶ 48, 59.)  Moreover, Ms. Ensing's Complaint triggers the burden of pleading actual malice because it seeks punitive damages.  *Myers v. Pickering Firm, Inc.*, 959 S.W.2d 152, 164 (Tenn. Ct. App. 1997) (under Tennessee law, "[u]nless 'actual malice' is shown, punitive damages are not permitted").

To try to allege actual malice here, Ms. Ensing uses an often-tried, never-successful ploy: claiming Defendants could not genuinely disagree with Ms. Ensing's own denial because of her later "clarification" of her meaning.  She admits in her Complaint that immediately after tweeting about the events at the Capitol, her comments stirred so much public controversy and negative comment that she felt compelled to issue another tweet "[t]o clarify" that her earlier tweets were not condoning violence.  (Compl. ¶ 20.)  She then alleges that, because Sephora did

10

not accept this self-serving "clarification," Defendants either knew their statements about her earlier tweets were false or seriously doubted their truth. (*Id*. ¶ 31.)

This way of alleging actual malice fails completely. There is no doubt—Ms. Ensing admits—her statements caused controversy, such that once, maybe even twice, readers deemed her conduct unacceptable. Otherwise no "clarification" would have been necessary. As a result, Ms. Ensing's position seems to be that once she, as a public figure, offered a benign explanation of comments that caused controversy, it became absolutely untruthful and therefore unlawful for anyone else to take issue with them.

The case law is clear, however, that this provides no plausible basis for Defendants having supposedly known their statements were false. As the Supreme Court has itself ruled, a clarification has no impact whatsoever on the actual malice analysis. *Harte-Hanks Commc'ns., Inc. v. Connaughton*, 491 U.S. 657, 691 n.37 (1989) (speakers "need not accept 'denials, however vehement,'" as they are "'so commonplace in the world of polemical charge and countercharge that, in themselves, they hardly alert the conscientious [speaker] to the likelihood of error'") (quoting *Edwards v. Nat'l Audubon Soc., Inc.*, 556 F.2d 113, 121 (2d Cir. 1977)); *see also Liberty Lobby, Inc. v. Anderson*, 746 F.2d 1563, 1569 (D.C. Cir. 1984) (Scalia, J.) ("mere general allegations of falsity similar to those contained in the complaint do not suffice" to establish actual malice), *vacated on other grounds*, 477 U.S. 242 (1986).

Indeed, if Ms. Ensing's theory were accepted and "a subject's simple denial is sufficient to demonstrate" actual malice, "then no disputed fact could ever safely be published." *Lemelson v. Bloomberg LP*, 253 F. Supp. 3d 333, 340–41 (D. Mass. 2017). As a result, Ms. Ensing's denial is insufficient as a matter of law to plausibly allege Defendants' actual malice, and her tort claims must be dismissed. *See, e.g.*, *id*. at 341 (dismissing defamation claim for failure to "meet

the high bar required to plausibly plead 'actual malice'" even though plaintiff had denied

statement at issue); *Tah v. Global Witness Publ'g, Inc.*, 991 F.3d 231, 242 (D.C. Cir. 2021)

(allegations that defendants acted with actual malice because they "fail[ed] to credit [plaintiffs']

denials" finds "no support in our First Amendment case law"; affirming dismissal for failure to

plausibly plead actual malice).

**B.     Ms. Ensing's Defamation and False Light Claims Should Be Dismissed Because the
         Alleged Defamatory Statements are Protected Opinion Based on Disclosed Facts
         and Incapable of Conveying Defamatory Meaning.**

A second bedrock free speech principle vitiates Ms. Ensing's Complaint:  she

impermissibly attempts to hold Defendants liable for expressions of protected opinion.  *See, e.g.*,

*Seaton v. Tripadvisor LLC*, 728 F.3d 592, 601 n.9 (6th Cir. 2013) (applying Tennessee law, a

plaintiff "cannot prove falsity" as required for false light claims where the statement "constitutes

protected opinion").  Because there is no such thing as a "false idea," *Gertz v. Robert Welch,*

*Inc.*, 418 U.S. 323, 339 (1974), "a viable defamation claim exists only where a reasonable

factfinder could conclude that the challenged statement connotes actual, objectively verifiable

facts." *Compuware*, 499 F.3d at 529.  Statements that are inherently subjective cannot be proved

objectively false, and therefore cannot give rise to liability.  *E.g.*, *Phantom Touring, Inc. v.*

*Affiliated Publ'ns*, 953 F.2d 724, 727 (1st Cir. 1992).

Indeed, statements of opinion are not actionable unless they "imply the existence of

undisclosed defamatory facts justifying the opinion."  *Revis v. McClean*, 31 S.W.3d 250, 253

(Tenn. Ct. App. 2000); *see also Stones River Motors, Inc. v. Mid-South Publ'g Co., Inc.*, 651

S.W.2d 713, 720 (Tenn. Ct. App. 1983) (if bases for opinion are disclosed, "comments upon or

characterizations of published facts" are not actionable), *abrogated in part on other grounds as*

*recognized by Zius v. Shelton*, No. E1999-01157-COA-R3-CV, 2000 WL 739466, at *3 (Tenn.

Ct. App. June 6, 2000).  A recipient cannot conclude "that the derogatory opinion expressed in

the comment must have been based on undisclosed defamatory facts," unless a speaker declines to state a basis for a derogatory opinion. Restatement (2d) of Torts § 566, cmt. c. If, by contrast, the speaker identifies the basis for its opinion, the listener will not assume some secret defamatory basis exists, so no defamation can arise "no matter how unjustified and unreasonable the opinion may be or how derogatory it is." *Id.*

"Whether a communication is capable of conveying a defamatory meaning is a question of law." *Revis*, 31 S.W.3d at 253. Each of the statements at issue in this case is constitutionally protected opinion based on disclosed facts.

### 1. Statement #1 is Not Actionable.

The first statement at issue, in which Sephora stated that Ms. Ensing "recently shared content on social media that is not aligned with Sephora's values around inclusivity," is not capable of defamatory meaning under Tennessee law for two independent reasons.

Sephora's "values around inclusivity" are inherently subjective, and whether Ms. Ensing's recent social media activity is "aligned" with them or not cannot be proved false. The court in *Liberty Lobby*, 746 F.2d at 1572, addressed a similar statement, where a plaintiff sued when his ideas were described as "inconsistent" with the values "central to the 'American idea.'" There then-Judge Scalia explained that "[t]here are no objective criteria by which the truth or falsity of these statements can be evaluated," and "what is or is not consistent with [the American idea] is preeminently a matter for political (*i.e.*, opinionated) debate rather than scientific inquiry." *Id.* at 1572–73. The same applies to whether Ms. Ensing's social media activity was "aligned" with Sephora's "values around inclusivity"—these are subjects for debate, and not for a trial to determine whether Sephora is objectively wrong about what conforms with its own values.

To avoid this conclusion, Ms. Ensing concocts a supposedly objective, static definition of

13

Sephora's "values around inclusivity" by citing a Sephora website addressing diversity issues that allegedly "defines" inclusivity "variously" throughout the page. (Compl. ¶ 32.) Ms. Ensing does not allege that Sephora cited that website in its statements about her, nor that Sephora identified that website as the sole, definitive statement of its values. In any event, as alleged in the Complaint, the website refers to the notion of inclusivity as, in part, "supporting equity, justice, and inclusion" (*id.*)—all concepts that are inherently uncertain and subjective.

Second, Sephora's statement discloses the basis for Sephora's opinion of Ms. Ensing's recent social media posts, all of which were by their very nature public. That disclosure by Sephora prevents any reader from assuming Sephora's opinion is based on defamatory facts Sephora has not disclosed (*see* Restatement (2d) of Torts § 566, cmt. c) and renders Statement #1 non-actionable. *Revis*, 31 S.W.3d at 253.

A recent Tennessee case illustrates that even where parties have offered far more extreme opinions regarding another's attitudes, so long as the speakers disclosed the basis for their views, courts will not step in to adjudicate the "correctness" of an opinion. In *Weidlich v. Rung*, No. M2017-00045, 2017 WL 4862068, (Tenn. Ct. App. Oct. 26, 2017), a Facebook post called the plaintiffs "white supremacist[s]." The court found that statement incapable of defamatory meaning because it was accompanied by a photograph of the plaintiffs' car with controversial bumper stickers, and thus "could only be read as being her opinion based upon what the photo showed and did not imply the existence of unstated defamatory facts." *Id.* at *6 (quotations omitted). The court expressly declined an invitation to litigate "whether the conclusion [defendant] expressed" on the symbolism and meaning of those bumper stickers was "correct," explaining that "[r]eaders could view the same photograph and decide for themselves." *Id.* at *7.

### 2. Statements #2 And #3 Are Not Actionable.

Ms. Ensing alleges, as Statement #2, that "Defendants accused Ms. Ensing of 'making

14

light of the violence and tragic loss of life at our national Capital [sic] last month' on her social media platforms," and that Sephora's same comments went on, as Statement #3, to claim that "Ms. Ensing was an inappropriate partner for Defendants' brand." (Compl. ¶¶ 27–28, 33–34.) For the same reasons applicable to Statement #1, neither Statement #2 nor Statement #3 is capable of defamatory meaning.

Each statement is inherently a subjective opinion. Saying someone "made light" of an event requires comparing that person's response to one's own subjective beliefs about the appropriate levels of concern, solemnity, and seriousness warranted by the event. As then-Judge Scalia stressed, there are no standards by which this Court could adjudicate that issue or whether Sephora "falsely" "deemed" a partnership with Ms. Ensing to be "inappropriate for its brand." *See Liberty Lobby*, 746 F.2d at 1572. Because no "objectively verifiable" basis exists to prove the falsity of these opinions, Statements #2 and 3 cannot support a defamation claim. *See Compuware*, 499 F.3d at 529.

Further, as Ms. Ensing admits, Sephora's statements were expressly based on Ms. Ensing's social media posts. Sephora disclosed the basis of its subjective opinions and did not hint it knew of any other, undisclosed reason for them. Thus, these opinions are not actionable "no matter how unjustified and unreasonable" Ms. Ensing may believe them to be. *See Revis,* 31 S.W.3d at 253; Restatement (2d) of Torts § 566, cmt. c.

### 3. Statement #4 Is Not Actionable.

Statement #4 is an internal Sephora email allegedly sent by Ms. Yeh,[5] supposedly saying

---

[5] Ms. Ensing connects Ms. Yeh with Statement #4 only, which Ms. Yeh is alleged to have made as Sephora's marketing director. (*See* Compl. ¶ 35.) There is therefore no basis in the Complaint for suing Ms. Yeh individually for this or any other statement. More immediately, because Statement #4 is non-actionable, Ms. Yeh should be dismissed from the Complaint outright.

that Ms. Ensing "used her platform to share or highlight racially insensitive and discriminatory language, and made light of the violence at our nation's Capital [*sic*] last month." (Compl. ¶ 35.) The portion of this statement about the January 6, 2021 attack on the Capitol is substantially similar to Statement #2, and non-actionable for the reasons set forth above. The remaining portion—saying that Plaintiff "used her platform to share or highlight racially insensitive and discriminatory language"—is not capable of defamatory meaning for the same reasons as the other statements. They are subjective opinions not subject to objective verification.

Moreover, once again, Defendants expressly identified the basis for their opinion: Ms. Ensing's social media posts. Given that disclosure, no reader could assume it was based on secret, undisclosed facts, and no defamation can therefore arise. *Revis*, 31 S.W.3d at 253. The law is clear: so long as the basis for an opinion is disclosed, then "no matter how unjustified and unreasonable" that opinion might seem, it is not actionable. Restatement (2d) of Torts § 566, cmt. c.; *see also Stones River Motors*, 651 S.W.2d at 720 (if bases for an opinion are disclosed, "comments upon or characterizations of published facts are not in themselves actionable").

Finally, because Statement #4 was an internal Sephora email, meant only for Sephora employees, Defendants did not "publish" it and therefore cannot be liable for it. *See McPherson v. Vignobles Sullivan, LLC*, No. 3:20-cv-00384, 2020 WL 7624173, at *2 (M.D. Tenn. Dec. 22, 2020) (Campbell, J.) ("In Tennessee, communications among agents of the same corporation made within the scope and course of their employment relative to duties performed for that corporation are not to be considered as statements communicated or publicized to third persons.").

## C. Ms. Ensing's False Light Claims Should Be Dismissed.

As set forth on pages 9–16, Ms. Ensing's false light claim should be dismissed for failure to plausibly allege actual malice or objective falsity.

16

Her false light claim should also be dismissed with respect to Statement #4 because she fails to plausibly allege publicity, a necessary element of a false light claim. Tennessee courts have held that the requisite publicity is defined by Comment a to Restatement (Second) of Torts Section 652D. *Secured Fin. Sols., LLC v. Winer*, No. M2009-00885, 2010 WL 334644, at *4 (Tenn. Ct. App. Jan. 28, 2010). That Comment in turn provides that "publicity" means "that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Restatement (2d) of Torts § 652D, cmt. a.

Ms. Ensing alleges that Ms. Yeh sent Statement #4 to Sephora employees by email. (Compl. ¶ 35.) Ms. Ensing alleges no facts about the email, the number of Sephora employees who allegedly received it, or anything else that renders plausible the notion that an internal corporate email "must be regarded as substantially certain" to become public knowledge.

**D.    Ms. Ensing's Tortious Interference With Contractual Relations Claim Should Be Dismissed.**

To state a claim for tortious interference with contractual relations a plaintiff must allege:

(1) that a legal contract existed; (2) that the defendant was aware of the contract; (3) that the defendant intended to induce a breach of that contract; (4) that the defendant acted with malice; (5) that a breach of the contract occurred; (6) that the breach was a proximate result of the defendant's conduct; and (7) that the breach injured the plaintiff.

*Whitehardt, Inc. v. McKernan*, No. 3:15-cv-01307, 2016 WL 4091626, at *8 (M.D. Tenn. Aug. 2, 2016) (quoting *Givens v. Mullikin ex rel. Estate of McElwaney*, 75 S.W.3d 383, 405 (Tenn. 2002). As set forth above, because this claim is predicated on allegedly defamatory conduct, it is also subject to the actual malice requirement, which Ms. Ensing has not satisfied. (*See* pages 9–12.) But Ms. Ensing has also failed to plausibly allege at least three of the more traditional elements of her tortious interference claim.

4851-0629-9376

First, Ms. Ensing has failed to plausibly allege any legal contracts supposedly interfered with.  Instead, she alleges she had "relationships" with various beauty and lifestyle companies and those "relationships" "involved" "contractual terms and transactions."  (Compl. ¶ 73.)  None of those carefully-wrought phrases alleges that Ms. Ensing had an enforceable, legal contract with any of the named beauty brands.  Those phrases would instead be consistent with the sorts of relationships Ms. Ensing alleges she had with Sephora—occasional contact through third parties (*id.* ¶ 21) or isolated contracts for individual videos that had already been performed (*id.* ¶ 22).  Without a straightforward allegation that Ms. Ensing had any contracts in place, this claim fails.

Second and relatedly, Ms. Ensing fails to allege any contract breach.  She alleges only that Defendants "induced the *termination* of these existing relationships."  (*Id.* ¶ 74 (emphasis added).)  But a termination is not a breach; parties frequently contract for the right to terminate agreements, or just do not renew them, so that alleging only a termination of a contract fails to plausibly allege a breach.  *Whitehardt*, 2016 WL 40191626 at *8 (dismissing tortious interference claim where complaint lacked any allegations that the contract at issue required any continued performance).

Finally, Ms. Ensing fails to plead any facts rendering plausible her allegation that Defendants knew about her "relationships."  The Complaint relies solely on a bare conclusion— "Defendant knew of these relationships" (Compl. ¶ 74)—and nothing else.  Such a "threadbare recital" is insufficient to plausibly allege Defendants' requisite knowledge.  *See Iqbal*, 556 U.S. at 679.

**E.      Plaintiff's Tortious Interference with Prospective Business Relationship Claim Should Be Dismissed.**

To state a claim for tortious interference with prospective business relationships, a

plaintiff must plead:

> (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's improper motive or improper means; and finally, (5) damages resulting from the tortious interference.

*Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002). Because this claim is predicated on allegedly defamatory conduct, it is once again subject to the actual malice requirement that Ms. Ensing has not met. (*See* pages 9–12.) Ms. Ensing also fails to plausibly allege the standard second and fourth elements of such a claim.

In articulating the second element, the Supreme Court of Tennessee has emphasized that the defendant must know specifically about the prospective business relationships at issue, and not merely that the plaintiff has "business dealings with others in general." *Trau-Med*, 71 S.W.3d at 701. By contrast, the Complaint here alleges only: "Defendants knew of these relationships." (Compl. ¶ 82.) This is insufficient as a matter of law. *E.g.*, *Personal Comp. Sys., Inc. v. C. Knox, Inc.*, No. 3:11-cv-374, 2012 WL 1108245, at *5 (E.D. Tenn. Mar. 30, 2012) (complaint that "does not allege any facts that would support the conclusion that [defendant] had any knowledge that [plaintiff] had existing relationships" dismissed for failure to state a claim).

The fourth element, meanwhile, cannot be satisfied without plausible allegations of either improper motive or improper means. None of Ms. Ensing's vague allegations pleads "improper motive." *See, e.g.*, *Freeman Mgmt. Corp. v. Shurgard Storage Ctrs., LLC*, 461 F. Supp. 2d 629, 639 (M.D. Tenn. 2006) ("[A]llegations of mere 'malice' are not sufficient . . . rather, to satisfy the 'improper motive' element . . . harm to the plaintiff must be the defendant's 'predominant motivation.'"). To plausibly plead "improper motive," Ms. Ensing would have needed instead to have pled facts demonstrating it is plausible that "defendant's predominant purpose was to injure

the plaintiff." *Trau-Med*, 71 S.W.3d at 701 n.5.  The Complaint lacks any allegation regarding Defendants' purposes, much less which one predominated, so no "improper motive" was pled. *Stinson v. Dalton*, No. 08-2076, 2009 WL 10664880, at *4 (W.D. Tenn. Jan. 29, 2009) (where plaintiff "presented no factual allegations about [defendant's] subjective intent or motive," plaintiff failed "to establish that [defendant's] predominant purpose was to injure Plaintiff").

Ms. Ensing cannot allege "wrongful means" via defamation.  (Compl. ¶ 84.)  Where a tortious interference claim relies upon defamation as the "improper means," and the defamation claim is dismissed, the tortious interference claims must meet the same fate.  *Seaton*, 728 F.3d at 603  (under Tennessee law, where plaintiff relied on alleged defamation as improper means and the statement was "not capable of being understood as defamatory, [plaintiff] failed to state a plausible claim for tortious interference").  Because Ms. Ensing's defamation claims should be dismissed, her "improper means" allegations, and her interference claim as a whole, fail as well.

## F.     Ms. Ensing's Conspiracy Claim Should Be Dismissed.

Ms. Ensing's conspiracy claim also fails as a matter of law.  First, "there is no liability under a theory of civil conspiracy unless there is underlying wrongful conduct." *Levy v. Franks*, 159 S.W.3d 66, 82 (Tenn. Ct. App. 2004).  Because each other claim should be dismissed (as set forth above), the conspiracy theory likewise should be dismissed. *Brown v. Christian Bros. Univ.*, 428 S.W.3d 38, 59 (Tenn. Ct. App. 2013) (if "an underlying substantive claim fails," the related conspiracy claim "must also fail").

Second, a conspiracy claim must allege a "combination" of "two or more persons," *Trau-Med.*, 71 S.W.3d at 703, which Ms. Ensing has not done.  The alleged conspiracy here is between Sephora and Ms. Yeh, who was alleged to have been acting in her capacity as a Sephora employee and officer.  (Compl. ¶¶ 58, 88.)  As a matter of law, these Defendants cannot form a conspiracy.  Tennessee recognizes the "intracorporate conspiracy immunity doctrine," and its

20

Supreme Court has held "there can be no actionable claim of conspiracy where the conspiratorial conduct alleged is essentially a single act by a single corporation acting through its officers, directors, employees, and other agents, each acting within the scope of his or her employment." *Trau-Med.*, 71 S.W.3d at 703–04 (emphasis removed).

### UNDER THE TENNESSEE PUBLIC PARTICIPATION ACT, MS. ENSING MUST NOW PRESENT A *PRIMA FACIE* CASE FOR EVERY ELEMENT OF HER CLAIMS.

By choosing to file suit where Tennessee law would apply, Ms. Ensing has, in addition, chosen to accept the additional burdens the TPPA imposes upon claims based on free speech. As a result, in addition to plausibly allege her claims, she must also "establish a *prima facie* case for each essential element" of her claims. This she cannot do.

The TPPA provides a unique set of protections for claims, like those here, that are brought under Tennessee law and relate to the right to speak and associate freely. *E.g.*, Tenn. Code Ann. § 20-17-102. Once a defendant has established the claims are of that ilk, the plaintiff must make a *prima facie* showing—with admissible evidence presented at a hearing, if needed— of every element of the claims. *Id.* § 20-17-105. If the plaintiff falls short, or if the defendant establishes a valid defense, the action must be dismissed with prejudice. *Id.*

In other Circuits, plaintiffs have argued, and some courts have found, that state anti-SLAPP laws conflict with federal rules such as Rules 12(b)(6) and 56 and therefore do not apply in federal court.[6] Should Ms. Ensing raise that argument here, she would be wrong.

Under the *Erie* doctrine, federal courts utilizing diversity jurisdiction must apply state substantive law and federal procedural law. *E.g.*, *Cook v. Greenleaf Twp., Michigan*, No. 20-1985, 2021 WL 2433444, at *2 (6th Cir. June 15, 2021). In a decision known as *Shady Grove*,

---

[6] The TPPA became effective on July 1, 2019. To Defendants' knowledge, no federal court has ruled on whether the TPPA applies in federal court, nor has the Sixth Circuit weighed in on any other state's anti-SLAPP laws.

4851-0629-9376

the Supreme Court explained how state law applies when "both a federal rule and a state law appear to govern a question" for a court sitting in diversity. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 421 (2010) (Stevens, J., concurring). The Sixth Circuit has recognized that Justice Stevens's concurrence provides the controlling "two-step" analysis. *Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1091 n.2 (6th Cir. 2016).[7]

First, a court must determine if a federal rule is "sufficiently broad" to "control the issue" before the court, leaving "no room for the operation" of the state law. *Shady Grove*, 559 U.S. at 421. Critically, if the state and federal rules "can operate alongside" one another, then the court proceeds to an ordinary *Erie* analysis; the second step is not required unless there is a "direct collision" between them. *Id.* In the second step, the court must determine if the state law creates a "substantive right." *Id.* at 422. If a federal rule and a state substantive right conflict, the court must attempt a "saving construction" of the federal rule that avoids the conflict. *Id.* at 422–23 (thus, "the second step of the inquiry may well bleed back into the first"). If the conflict is unavoidable, the federal rule cannot apply, nor can it "displace a state law that is procedural in the ordinary use of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state-created right." *Id.* at 423.

Under the *Shady Grove* analysis, the TPPA applies in federal court. First, there is no

---

[7] *Shady Grove* was an "unusual case," *Whitlock*, 843 F.3d at 1091 n.2., in which Justice Scalia wrote for the majority in announcing the judgment and for a plurality in describing his reasoning. Justice Stevens concurred in the judgment and wrote separately to describe his approach. The remaining justices dissented. *Shady Grove*, 559 U.S. at 395. Applying the Supreme Court's rules for fractured decisions, the Sixth Circuit held that Justice Stevens's concurrence provides the holding because his opinion "is the narrowest in support of the judgment." *Whitlock*, 843 F.3d at 1091 n.2. Still, because the TPPA does not address the same question as any federal rules, it would also pass muster if analyzed under Justice Scalia's approach in *Shady Grove*. *Cf. Shady Grove*, 559 U.S. at 398–99 (majority opinion) (finding New York statute that prohibited class actions in suits seeking penalties answered same question, and directly conflicted with, Fed. R. Civ. P. 23's granted right of when a class action "may be maintained").

"direct collision" that makes the TPPA impossible to "operate alongside" any federal rule. As the First Circuit has explained, Rules 12(b)(6) and 56 provide certain general bases for pre-trial dismissal, but anti-SLAPP statutes provide for dismissal "on an entirely different basis: that the claims in question rest on defendant's petitioning conduct and that the plaintiff cannot meet the special rules [a state] has created to protect such petitioning activity against lawsuits." *See Godin v. Schenks*, 629 F.3d 79, 89 (1st Cir. 2010) (finding Maine's anti-SLAPP law applies in federal court). Rule 12(b)(6) answers whether a plaintiff has stated a claim, and Rule 56 answers whether the movant is entitled to judgment because there is no dispute of any material fact. The TPPA, in contrast, does not address either question; instead, for a small subset of claims, it allows for dismissal based on whether (i) the plaintiff can make a *prima facie* evidentiary showing without further discovery or (ii) the defendant can make out a valid defense. Tenn. Code Ann. §§ 20-17-104, 20-17-105.

Accordingly, there is no "direct collision"; all federal rules, and the TPPA, can be separately and distinctly applied, and the TPPA does not take away any right that federal rules provide. *See also U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 972 (9th Cir. 1999) (applying California anti-SLAPP statute because there is no indication Rules 8, 12, and 56 "were intended to 'occupy the field' with respect to pretrial procedures aimed at weeding out meritless claims"); *Caranchini v. Peck*, 355 F. Supp. 3d 1052, 1061 (D. Kan. 2018) (Kansas anti-SLAPP law "does not substitute Rules 12 and 56, it merely supplements them for a narrow category of cases").

The second step of the *Shady Grove* analysis is therefore unnecessary here, but it too would support the TPPA's application because the TPPA provides substantive rights. The TPPA says so on its face. Tenn. Code Ann. § 20-17-109 ("This chapter is intended to provide an

23

additional *substantive remedy* to protect the constitutional rights of parties…") (emphasis added); *see also id.* § 20-17-102 (the TPPA's purpose is to "encourage and safeguard the constitutional rights of persons" to free speech and association, and "shall be construed broadly to effectuate its purposes and intent"). Indeed, the Tennessee Court of Appeals recently confirmed that the TPPA is not a mere rule of civil procedure. *Nandigam Neurology, PLC v. Beavers*, No. M202000553COAR3CV, 2021 WL 2494935, at *11 n.7 (Tenn. Ct. App. June 18, 2021).

In addition, the Sixth Circuit has acknowledged that anti-SLAPP laws are immunities from suit, and not mere defenses to liability, and thus are "imbued with a significant public interest." *Black v. Dixie Consumer Prods. LLC*, 835 F.3d 579, 584 (6th Cir. 2016); *see also Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 879 (1994) ("When a policy is embodied in a constitutional or statutory provision entitling a party to immunity from suit (a rare form of protection), there is little room for the judiciary to gainsay its 'importance.'"). Finally, the TPPA contains burden-shifting provisions, Tenn. Code Ann. § 20-17-105, which have been held to demonstrate that a state law "exist[s] to influence substantive outcomes" under *Shady Grove*. 559 U.S. at 420; *see also Godin*, 629 F.3d at 89; *Caranchini*, 355 F. Supp. 3d at 1061. Because the TPPA provides substantive rights, the federal rules must either be applied using a "saving construction" or yield to the state law. *Shady Grove*, 559 U.S. at 423.

The final step is the *Erie* analysis, which is easily satisfied. The same analysis that confirms the TPPA confers substantive rights in "step two" of *Shady Grove* proves that, under the *Erie* doctrine, the TPPA is substantive state law that must be applied. Moreover, the Sixth Circuit's ordinary "functional test" for an *Erie* analysis, aimed at "discouragement of forum-shopping and avoidance of inequitable administration of the laws," further confirms the TPPA is

substantive. *See Preferred Capital, Inc. v. Sarasota Kennel Club, Inc.*, 489 F.3d 303, 308 (6th Cir. 2007). Applying the TPPA in federal courts ensures "the result would be the same in either [state or federal] court, thereby protecting the integrity of state policy." *Isaac v. Life Investors Ins. Co. of Am.*, 749 F. Supp. 855, 863 (E.D. Tenn. 1990). Any other outcome could deprive defendants of TPPA protections based on the "fortuity" of diversity of citizenship. *See Walker v. Armco Steel Corp.*, 446 U.S. 740, 753 (1980).

This action is unquestionably "based on, relates to, or is in response to" Defendants' exercise of the "right to free speech [and] right of association." Tenn. Code Ann. § 20-17-105(a); *see also id.* § 20-17-103(3) ("'Exercise of the right of free speech' means a communication made in connection with a matter of public concern"). As a result, the Court "shall dismiss the legal action," with prejudice, if it finds Defendants have made out a valid defense or if Ms. Ensing fails to establish a *prima facie* case for every essential element of her claims. *Id.* § 20-17-104(b). Finally, if the action is dismissed on TPPA grounds, the Court "shall" award Defendants their "court costs, reasonable attorney's fees, discretionary costs, and other expenses incurred in filing and prevailing upon the petition." *Id.* § 20-17-107(a)(1). Defendants request this relief in an amount to be determined upon a post-judgment fee petition.

## CONCLUSION

For the reasons set forth herein, the Court should dismiss this action for lack of personal jurisdiction over the Defendants and/or because this is not a proper venue. In any event, the Court should dismiss the claims under Rule 12(b)(6) and, given that Ms. Ensing has failed to establish a *prima facie* case for every element of her claims, do so with prejudice.

Dated: June 29, 2021                    Respectfully submitted,


                                         By:*/s/ Charles K. Grant*
                                         Charles K. Grant (#017081)
                                         BAKER, DONELSON, BEARMAN,
                                         CALDWELL & BERKOWITZ, PC
                                         1600 West End Avenue, Suite 2000
                                         Nashville, TN 37203
                                         (615) 726-5600 (phone)
                                         cgrant@bakerdonelson.com

                                         Robert E. Shapiro (*pro hac vice* forthcoming)
                                         Joshua W. Mahoney (*pro hac vice* forthcoming)
                                         Connor T. Gants (*pro hac vice* forthcoming)
                                         Carmel I. Dooling (*pro hac vice* forthcoming)
                                         Barack Ferrazzano Kirschbaum & Nagelberg LLP
                                         200 W. Madison Street, Suite 3900
                                         Chicago, Illinois 60606
                                         (312) 984-3100 (phone)
                                         rob.shapiro@bfkn.com
                                         joshua.mahoney@bfkn.com
                                         connor.gants@bfkn.com
                                         carmel.dooling@bfkn.com

                                         *Counsel for Defendants Sephora USA, Inc. and
                                         Deborah Yeh*

4851-0629-9376

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing *Memorandum in Support of Sephora USA, Inc. and Deborah Yeh's Motion to Dismiss* has been served upon the following counsel of record via the court's electronic service on June 29, 2021:

      Timothy L. Warnock
      Katharine R. Klein
      Riley Warnock & Jacobson, PLC
      1906 West End Avenue
      Nashville, TN 37203
      twarnock@rwjplc.com
      kklein@rwjplc.com


      John Pierce
      Pierce Bainbridge PC
      355 S. Grand Avenue, 44th Floor
      Los Angeles, CA  90071
      jpierce@piercebainbridge.com

      *Counsel for Plaintiff*

                           */s/ Charles K. Grant*
                           Charles K. Grant

4851-0629-9376