**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

AMANDA ENSING,

         Plaintiff,

    vs.

SEPHORA USA, INC., DEBORAH YEH, and DOES
1-1000,

         Defendants.

Case No. 3:21-cv-0421

Judge William L. Campbell
Magistrate Judge Jeffrey S. Frensley

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
<u>DEFENDANTS' MOTION TO STAY DISCOVERY (DOC. 36</u>)**

**PIERCE BAINBRIDGE P.C.**
355 South Grand Avenue, 45th Floor
Los Angeles, CA 90071
(213) 400-0725

*Attorneys for Plaintiff Amanda Ensing*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 3

    I. Defendants, Not Ms. Ensing, Waived Any Argument That the TPPA's Automatic-Stay Provision Applies in Federal Court. ................................................. 3

    II.   The TPPA Does Not Apply in Federal Court. ............................................... 5

          A.     Under Justice Stevens' Reasoning in *Shady Grove*, the TPPA Does Not Apply ................................................................................................. 6

        1.   The Standard Tools of Statutory Construction Establish That the TPPA Is Procedural ................................................................................................. 7

        2.   The TPPA Is Procedural Under Tennessee Courts' Precedents ......................... 10

        3.   Application of the TPPA Is Precluded by Rules 12 and 56 ................................ 12

          B.     Similar to the Ninth Circuit, This Court Should Allow Discovery Because the TPPA's Discovery Restrictions Are Antithetical to the Federal Rules……………………………………………15

    III.  Regardless of Whether the TPPA Applies, Ms. Ensing Is Still Entitled To Discovery ................................................................................................. 18

CONCLUSION.................................................................................................................. 19

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbas v. Foreign Policy Grp., LLC*,
    783 F.3d 1328 (D.C. Cir. 2015)...................................................................12, 13

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).......................................16

*AR Pillow Inc. v. Maxwell Payton, LLC*,
    2012 WL 6024765 (W.D. Wash. 2012)..............................................................5, 16

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)..............................................................................................14

*Carbone v. Cable News Network, Inc.*,
    910 F.3d 1345 (11th Cir. 2019) ............................................................................12

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)........................................................................................14, 15

*Chapman v. Houston Welfare Rights Org.*,
    441 U.S. 600, 617–18 (1979)..................................................................................9

*Coffman v. Armstrong Int'l, Inc.*,
    651 S.W.3d 888 (Tenn. 2021)..................................................................................7

*Creech v. Addington*,
    281 S.W.2d 363 (Tenn. 2009)................................................................................11

*In re Estate of Cleveland*,
    2017 WL 902269 (Tenn. Ct. App. Mar. 7, 2017) ..................................................10

*Houghton v. Aramark Educ. Res.*,
    90 S.W.3d 676 (Tenn. 2002)..............................................................................9, 10

*Klocke v. Watson*,
    936 F.3d 240 (5th Cir. 2019) ..........................................................................12, 15

*La Liberte v. Reid*,
    966 F.3d 79 (2d Cir. 2020)....................................................................................12

*Lampo Grp., LLC v. Paffrath*,
    2019 WL 3305143 (M.D. Tenn. July 23, 2019) ......................................1, 5, 13, 14

Case 3:21-cv-00421   Document 38   Filed 10/12/21   Page 3 of 26 PageID #: 217

*Long v. Adams*,
    411 F. Supp. 2d 701 (E.D. Mich. 2006)............................................................................6

*Los Lobos Renewable Power, LLC v. Americulture, Inc.*,
    885 F.3d 659 (10th Cir. 2018) ...............................................................................12

*Metabolife Int'l, Inc. v. Wornick*,
    264 F.3d 832 (9th Cir 2001) ...........................................................2, 5, 15, 16

*Metabolife Int'l, Inc. v. Wornick*,
    72 F. Supp. 2d 1160 (S.D. Cal. 1999)..................................................................15, 16

*Nixon v. Haag*,
    2009 WL 2026343 (S.D. Ind. 2009) ..............................................................5, 17

*Parvin v. Newman*,
    518 S.W.3d 298 (Tenn. Ct. App. 2016) ...........................................................11

*Regions Bank v. Prager*,
    625 S.W.3d 842 (Tenn. 2021).............................................................................11

*Rogers v. Home Shopping Network, Inc.*,
    57 F. Supp. 2d 973 (C.D. Cal. 1999) ............................................................2, 5, 16

*Sallee v. Barrett*,
    171 S.W.3d 822 (Tenn. 2005)..............................................................................7

*Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010) (Stevens, J., concurring)..............................................6, 7, 12, 13

*State ex re. Smith v. Early*,
    934 S.W.2d 655 (Tenn. App. Ct. 1996) ...........................................................11

*SunTrust Bank v. Ritter*,
    2018 WL 674000 (Tenn. Ct. App. Feb. 1, 2018)...............................................11, 12

*Swierkiewicz v. Sorema N.A.*,
    534 U.S. 506 (2002)...........................................................................................14

*Tah v. Global Witness*,
    991 F.3d 231 (D.C. Cir. 2021)......................................................................12, 13

*Walker v. Armco Steel Corp.*,
    446 U.S. 740 (1980)..............................................................................................6

*Whitlock v. FSL Mgmt., LLC*,
    843 F.3d 1084 (6th Cir. 2016) .......................................................................7, 13

iii

*Winley v. Rudolph*,
    931 S.W.2d 513 (Tenn. 1996)...............................................................................9

**Statutes**

42 U.S.C. § 1983 ....................................................................................................9

**Federal Rules**

Fed. R. Civ. P. 8 ...............................................................................................5, 14

Fed. R. Civ. P. 12 ....................................................................................... *passim*

Fed. R. Civ. P. 23 .................................................................................................13

Fed. R. Civ. P. 26 ............................................................................................1, 18

Fed. R. Civ. P. 30(b)(6)......................................................................................3, 17

Fed. R. Civ. P. 56 ....................................................................................... *passim*

**State Statutes**

Tenn. Code Ann. § 20-17-101 *et seq.* ..................................................................1

Tenn. Code Ann. § 20-17-102 ..........................................................................8, 9

Tenn. Code Ann. § 20-17-104 ..................................................................1, 2, 5,15

Tenn. Code Ann. § 20-17-105 .........................................................................11,14

Tenn. Code Ann. § 20-17-107 ............................................................................12

Tenn. Code Ann. § 20-17-108 ..........................................................................7, 10

Tenn. Code Ann. § 20-17-109 ..............................................................................9

Tenn. Code Ann. tit. 20.........................................................................................8

**State Rules**

Cal. Civ. Proc. Code § 425.16 ..............................................................1, 2, 15, 16

Ind. Code § 34-7-7-6.........................................................................................5, 17

**Legislation Authorities**

Tenn. Bill Summ., 2019 Reg. Sess. H.B. 777.......................................................9

Tenn. Bill Summ., 2019 Reg. Sess. S.B. 1097 ....................................................9

Tenn. Bill Summ., 2020 Reg. Sess. H.B. 777 ...................................................................9

Tenn. Bill Summ., 2020 Reg. Sess. S.B. 1097 ................................................................9

Tenn. S. Republican Caucus News Release (July 29, 2019) ...........................................9

2019 Tenn. Pub. Acts ch. 185 .......................................................................................8

**Other Authorities**

BLACK'S LAW DICTIONARY (11th ed. 2019) ....................................................................14

v

# INTRODUCTION

Plaintiff, Amanda Ensing, respectfully requests that the Court deny Defendants' motion to stay discovery during the pendency of Defendants' Tennessee Public Participation Act ("TPPA") petition. (Doc. 36.) Defendants' request to stay discovery indefinitely during the pendency of their TPPA petition contradicts the Local Rules and Judge Campbell's standard initial case management order. There is a strong presumption in this District that discovery shall proceed during the pendency of dispositive motions. Under Local Rule 16.01(g), "Discovery is not stayed, including during the pendency of dispositive motions, unless specifically authorized by Fed. R. Civ. P. 26(d) or by order of the Court, or with regard to e-discovery, as outlined in Administrative Order 174-1."

Moreover, the TPPA, Tenn. Code Ann. § 20-17-101 *et seq.* does not apply in federal court. As Judge Eli Richardson already held in his well-reasoned opinion in *Lampo Grp., LLC v. Paffrath*, 2019 WL 3305143, at *4 (M.D. Tenn. July 23, 2019), "the motion-to-strike procedure created by the California anti-SLAAP statute cannot apply in federal court." The same is true here, with respect to Tennessee's highly similar "petition to dismiss" procedure. *Compare* Tenn. Code Ann. § 20-17-104(a)-(c) & § 20-17-105(b)(1)-(2), *with* Cal. Civ. Proc. Code § 425.16(b)(1)-(2). As Judge Richardson stated, "the standard provided by Tennessee's new anti-SLAPP law is different than that dictated by Federal Rules of Civil Procedure 8, 12, and 56." *Lampo*, 2019 WL 3305143, at *3, n.6.

More specifically, though, the TPPA's *automatic-stay provision* set forth in Tennessee Code Annotated § 20-17-104(d) does not apply in federal court. Section 20-17-104(d) states:

> All discovery in the legal action is stayed upon the filing of a petition under this section. The stay of discovery remains in effect until the entry of an order ruling on the petition. The court may allow specified and limited discovery relevant to the petition upon a showing of good cause.

1

Tenn. Code Ann. § 20-17-104(d).

Even the Ninth Circuit, which has held that California's anti-SLAAP motion-to-strike procedure is consistent with the Federal Rules of Civil Procedure, has held that California's virtually identical automatic-stay provision[1] contained in its anti-SLAAP law *cannot* apply in federal court:

> [The automatic-stay provision] limits discovery and makes further discovery an exception, rather than the rule. Rule 56 does not limit discovery. On the contrary, it ensures that adequate discovery will occur before summary judgment is considered.

> Because the discovery-limiting aspects of [the automatic-stay provision] collide with discovery-allowing aspects of Rule 56, these aspects of [the automatic-stay provision] cannot apply in federal court.

*Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir 2001) (quoting *Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973, 982 (C.D. Cal. 1999).

Even if the TPPA's automatic-stay provision applies in federal court (and it does not), Ms. Ensing is still entitled to "specified and limited discovery relevant to the petition upon a showing of good cause." *See* Tenn. Code Ann. § 20-17-104(d). In Defendants' memorandum in support of their TPPA Petition (which is actually just an additional section appended to Defendants' Rule 12 memorandum in support of their motion to dismiss) (Doc. 14, p. 25), Defendants' asserted basis for the TPPA petition is that "Ms. Ensing fails to establish a *prima facie* case for every essential element of her claims." (Doc. 14, p. 25.) In particular, Defendants assert that they did not act with "actual malice," so they cannot be held liable for defamation. (Doc. 14, pp. 9-11.) To rebut

---

[1] "All discovery proceedings in the action shall be stayed upon the filing of a notice of motion made pursuant to this section. The stay of discovery shall remain in effect until notice of entry of the order ruling on the motion. The court, on noticed motion and for good cause shown, may order that specified discovery be conducted notwithstanding this subdivision." Cal. Civ. Proc. Code § 425.16(g).

2

Defendants' actual-malice defense (assuming, *arguendo*, that such a showing is required) and to establish the evidentiary basis for her *prima facie* case, Ms. Ensing requests the following limited discovery: (1) the internal communications of Defendants that led to the publication of Defendants' allegedly defamatory statements; (2) a deposition of Ms. Yeh regarding her allegedly defamatory statements; and (3) the Rule 30(b)(6) deposition of Sephora USA, Inc. ("Sephora") regarding its allegedly defamatory statements, as well as its contacts with Ms. Ensing and the State of Tennessee, as those issues apply to the jurisdictional arguments set forth in the motion to dismiss.[2]

Ms. Ensing seeks to hold Defendants' accountable for their defamatory and malicious conduct. She respectfully requests that the Court deny Defendants' effort to indefinitely delay her day in court before the jury. Discovery should proceed promptly.

## **ARGUMENT**

### I. Defendants, Not Ms. Ensing, Waived Any Argument That the TPPA's Automatic-Stay Provision Applies in Federal Court.

Defendants first argue Ms. Ensing "waived any argument" that the TPPA's automatic-stay provision applies in federal court. (Doc. 37, p. 5.) In fact, it is *Defendants*, not Ms. Ensing, who waived any argument to stay discovery pursuant to the TPPA.

Defendants did not seek to stay discovery under the TPPA in either their motion to dismiss (Doc. 13) or memorandum in support (Doc. 14). In fact, the issue of whether to stay discovery under the TPPA's automatic-stay provision arose for the first time during the initial case

---

[2] When personal jurisdiction is challenged, as it is in this case, discovery is allowable for purposes of ascertain the facts bearing on such issues. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 342 (1978). That is especially true where, as here, the plaintiff alleges facts in support of a finding of personal jurisdiction over the defendants. *See Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295-96 (6th Cir. 2008); *Southern Mach. Co. v. Mahasco Industries, Inc.*, 401 F.3d 374 (6th Cir. 1968).

3

management conference, when the Magistrate Judge raised the issue *sua sponte*. Only then did Defendants claim that they sought a stay pursuant to the TPPA. If anyone waived their arguments regarding the TPPA discovery stay, it was Defendants.

Defendants' briefing before the Court solely concerned the "petition to dismiss" procedure under the TPPA—not the *separate* issue of whether the TPPA's automatic-stay provision applied. (*See generally* Docs. 13-14, 29.)[3] It simply was not possible for Ms. Ensing to waive the automatic-stay issue in that briefing, given that Defendants never raised the issue as one to be briefed.

In any event, Defendants are also incorrect in asserting that "Plaintiff in no way disputed that the TPPA applies in this forum and to this case." (Doc. 37, p. 1.) In their motion-to-dismiss briefing, Defendants had already raised *of their own volition* the issue of whether the TPPA could apply in federal court and devoted four pages of briefing to the conflicting federal decisions about whether anti-SLAAP laws apply in federal court. (Doc. 21, pp. 21-25.) Defendants already placed that issue before the Court. In response, Ms. Ensing pointed out that Defendants did not even attempt—as the TPPA requires—to meet their "burden of making a prima facie case that they are being sued because they exercised their right to free speech."[4] (Doc. 25, p. 15.) Rather than somehow conceding that the TPPA applies in federal court, Plaintiff's point was that the Court need not even go there because Defendants had not even tried to follow the steps necessary to

---

[3] Defendants argue that, regardless of whether the TPPA applies, the Magistrate Judge should not allow any discovery until the motion to dismiss is resolved to avoid a potentially "inconsistent" decision with the District Judge about the TPPA's applicability. (Doc. 37, pp. 14-15.) But because the automatic discovery-stay provision is separate from the petition-to-dismiss procedure, there is no risk of inconsistent decisions.

[4] Defendants submitted *no* affidavits or other evidentiary materials in support of their petition to dismiss.

4

invoke it.  And in the event that the Court held the TPPA applied, Ms. Ensing of course asked for her attorneys' fees under the TPPA.  No rule precludes making alternative arguments in federal court.  *Cf.* Fed. R. Civ. P. 8(a)(3) (authorizing seeking "relief in the alternative or different types of relief").

Defendants' "waiver" argument has no merit and should be rejected.  If anything, Defendants should be deemed to be the ones who waived any argument seeking a stay of discovery under the TPPA.

## II.    The TPPA Does Not Apply in Federal Court.

The TPPA's petition-to-dismiss procedure does not apply in federal court because it conflicts with Federal Rules of Civil Procedure 8, 12, and 56.  *See, e.g., Lampo Grp.*, 2019 WL 3305143, at *3, n.6; *see also id.* at *4 (holding "the motion-to-strike procedure created by the California anti-SLAAP statute cannot apply in federal court").

More specifically, the automatic-stay provision set forth in Tennessee Code Annotated § 20-17-104(d) does not apply in federal court because it, too, conflicts with Federal Rule of Civil Procedure 56.  *See, e.g., Metabolife*, 264 F.3d at 846: "[The California anti-SLAPP automatic-stay provision] limits discovery and makes further discovery an exception, rather than the rule.  Rule 56 does not limit discovery.  On the contrary, it ensures that adequate discovery will occur before summary judgment is considered. Because the discovery-limiting aspects of [the automatic-stay provision] collide with discovery-allowing aspects of Rule 56, these aspects of [the automatic-stay provision] cannot apply in federal court." (quoting *Rogers*, 57 F. Supp. 2d at 982).[5]  As explained

---

[5] *See also AR Pillow Inc. v. Maxwell Payton, LLC*, 2012 WL 6024765, at *3 (W.D. Wash. 2012) (holding that the Ninth Circuit's holding that the automatic stay of discovery in California's statute could not apply in federal court applied equally to the Washington statute); *Nixon v. Haag*, 2009 WL 2026343, at **3-4 (S.D. Ind. 2009) (holding discovery-limiting procedures of Indiana's anti-

5

more fully below, the TPPA, including its automatic-discovery stay provision, does not apply in federal court, so Defendants' motion to stay should be denied.

### A. Under Justice Stevens' Reasoning in *Shady Grove*, the TPPA Does Not Apply.

In *Shady Grove*, Justice Stevens established a two-step inquiry when determining whether a state statute conflicts with the federal rules: "The court must first determine whether the scope of the federal rule is sufficiently broad to control the issue before the court, thereby leaving no room for the operation of seemingly conflicting state law." *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 421 (2010) (Stevens, J., concurring) (citations and internal quotation marks omitted). In doing so, the court should look to the "plain meaning of [the] federal rule, . . . when fairly construed." *Id.* (citations and internal quotation marks omitted). Fair construction means "read[ing] the Federal Rules in such a way to give them their plain meaning; federal courts should not read the Federal Rules narrowly specifically to avoid a conflict with state law." *Long v. Adams*, 411 F. Supp. 2d 701, 706 (E.D. Mich. 2006) (citing *Walker v. Armco Steel Corp.*, 446 U.S. 740, 750 n.9 (1980)); *see also Shady Grove*, 559 U.S. at 421 n.5 (federal rules should not "be contorted . . . to accommodate state policy goals.").

If the court finds that the federal and state rules "directly collide," it must then decide whether the federal rule "abridge[s], enlarge[s] or modif[ies] any *substantive* right." *Shady Grove*, 559 U.S. at 422 (emphasis omitted and added) (internal quotation marks omitted). To determine whether the state rule is procedural, the court should look to how the state has defined "its own substantive rights." *Id.* at 426 n.10. This is because the "[Rules] Enabling Act's limitation does not mean that federal rules cannot displace state policy judgments; it means only that federal rules

_____

SLAPP statute, Ind. Code § 34-7-7-6, did not apply because the federal procedural rule superseded the conflicting state-law procedural rule restricting the scope of discovery).

6

cannot displace a State's definition of its own rights or remedies." *Id.* at 418 (citation omitted). Because the question of whether the TPPA is procedural is the more laborious inquiry, it will be addressed first.

### 1. The Standard Tools of Statutory Construction Establish That the TPPA Is Procedural

Since Tennessee's high court has not yet determined whether the TPPA is substantive or procedural, this Court "must predict how that court would rule, by looking to all available data." *Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1089 (6th Cir. 2016) (citation and quotation marks omitted). Thus, this Court should start by applying the Tennessee Supreme Court's rules of statutory interpretation.

"In interpreting statutes" courts must "construe them as a whole, read them in conjunction with their surrounding parts, and view them consistently with the legislative purpose." *Coffman v. Armstrong Int'l, Inc.*, 651 S.W.3d 888, 897 (Tenn. 2021) (citation and quotation marks omitted). Courts must "ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *Sallee v. Barrett*, 171 S.W.3d 822, 828 (Tenn. 2005) (citation and internal quotation marks omitted). "Legislative intent is derived from the plain and ordinary meaning of the statutory language unless the statute is ambiguous." *Id.* (citations omitted). "In ascertaining the legislature's intent," courts "must seek a reasonable construction in light of the purposes, objectives, and spirit of the statute based on good sound reasoning." *Id.* at 829 (citation and internal quotation marks omitted). These interpretive principles confirm that the TPPA is a procedural device:

First, Section 108, titled "Scope and construction," Tenn. Code Ann. § 20-17-108, provides: "Nothing in [the TPPA]: . . . [a]ffects the substantive law governing any asserted claim." *Id.* § 20-17-108(5). In other words, the statute does not "abridge, enlarge or modify any substantive

7

right" relating to defamation claims. *Shady Grove*, 559 U.S. at 422 (emphasis omitted and added) (internal quotation marks omitted). Thus, under federal law, it would certainly be deemed procedural. There is no reason to think Tennessee law would find otherwise.

Second, the Tennessee General Assembly codified the TPPA at Title 20 of the Tennessee Code, which is titled "Civil procedure." *See* Tenn. Code Ann. tit. 20; *see also* 2019 Tenn. Pub. Acts ch. 185 ("Tennessee Code Annotated, Title 20, is amended by adding the following new chapter: . . . This chapter shall be known and may be cited as the 'Tennessee Public Participation Act.'"). Thus, the statute was enacted as a procedural device.

Third, the TPPA's statement of purpose provides:

> The purpose of this chapter is to encourage and safeguard the constitutional rights of persons to petition, to speak freely, to associate freely, and to participate in government to the fullest extent permitted by law and, at the same time, protect the rights of persons to file meritorious lawsuits for demonstrable injury. This chapter is consistent with and necessary to implement the rights protected by Constitution of Tennessee, Article I, §§ 19 and 23, as well as by the First Amendment to the United States Constitution, and shall be construed broadly to effectuate its purposes and intent.

Tenn. Code Ann. § 20-17-102. This statement of purpose is important in two respects. First, it establishes that the TPPA is intended to protect the rights of both defamation plaintiffs ("protect the rights of persons to file meritorious lawsuits for demonstrable injury") and defendants. Thus, it was not enacted to shift the existing balance between liability and protection struck by the common law. Nor was it enacted to create new substantive protections for defamation defendants. Second, the plain language of Section 102 conveys that the TPPA's purpose is to mediate between substantive rights arising under the common law of defamation and the state and federal constitutions. In other words, it was enacted as a procedural device for adjudicating substantive rights.

8

Fourth, the legislative history uniformly describes the TPPA in procedural terms. For example, the Senate and House bill summaries each describe it as a rule of "[c]ivil [p]rocedure . . . which creates a process by which a person may petition a court to dismiss a legal action that is based on the person's exercise of the right to free speech, right to petition, or right of association." Tenn. Bill Summ., 2020 Reg. Sess. S.B. 1097; *see also*, *e.g.*, Tenn. Bill Summ., 2020 Reg. Sess. H.B. 777 (same); Tenn. Bill Summ., 2019 Reg. Sess. H.B. 777 (same); Tenn. Bill Summ., 2019 Reg. Sess. S.B. 1097 (same); Tenn. S. Republican Caucus News Release at 15 (July 29, 2019) (explaining that the TPPA protects the free speech rights of "whistle blowers, journalists, and political protestors . . . . by allowing them to petition the court for dismissal").

Fifth, the other side of the ledger is sparse. The Defendants may try to hang their hat on Section 109, which refers to the Act as creating a new remedy. Tenn. Code Ann. § 20-17-109. But such an argument would fail because "[a] remedy is not a right in and of itself." *Winley v. Rudolph*, 931 S.W.2d 513, 515 (Tenn. 1996). In *Winley*, the Tennessee Supreme Court explained that "[42 U.S.C.] Section 1983 is not the source of any federal right. It simply secures federal rights by providing a remedy for their violation." *Id.* at 515 n.2 (citing *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617–18 (1979)). Likewise, the plain language of Sections 102 and 108 evince that the TPPA's express purpose "is to encourage and safeguard the constitutional rights of persons . . . and, at the same time, protect the rights of persons to file meritorious lawsuits for demonstrable injury." Tenn. Code Ann. § 20-17-102. Thus, like Section 1983, the TPPA is a procedural device that protects substantive rights.

To the extent Defendants attempt to argue for an expansive interpretation of the statute because Section 109 uses the phrase "substantive remedy," such an argument fails because Tennessee adheres to the interpretive maxim that "statutes in derogation of the common law are to

9

be strictly construed and confined to their express terms." *Houghton v. Aramark Educ. Res.*, 90 S.W.3d 676, 679 (Tenn. 2002) (citation omitted). "Strict construction amounts to a recognition of a presumption against the legislature's intention to change existing law." *Id.* (citation omitted). "Thus, common law is not displaced by a legislative enactment, except to the extent required by the statute itself." *Id.* (citation omitted).

As defamation is a common law action, this Court must interpret the TPPA with the presumption that it does not displace defamation law unless "required by the statute itself." Clearly, such a result is not required in that one instance of the word "substantive" cannot rebut the legislature's clear directive that "[n]othing in [the TPPA]: . . . [a]ffects the substantive law governing any asserted claim." Tenn. Code Ann. § 20-17-108(5). It certainly cannot rebut all the statutory and legislative evidence, discussed above, that the TPPA is procedural to the extent necessary to overcome the "presumption against the legislature's intention to change existing law." Indeed, Section 108 is clear evidence of the legislature's intent not to change substantive defamation law or create any new substantive rights.

### 2. The TPPA Is Procedural Under Tennessee Courts' Precedents

Tennessee courts describe substantive law as "that part of the law which creates, defines, and regulates rights; that which creates duties, rights, and obligations; the law which relates to rights and duties which give rise to a cause of action." *In re Estate of Cleveland*, 2017 WL 902269, at *4 (Tenn. Ct. App. Mar. 7, 2017) (citation and internal quotation marks omitted).

By this definition, the TPPA is procedural: it does not "affect[] the substantive law governing any asserted claim." Tenn. Code Ann. § 20-17-108(5). Nor does it create a right of action. *See id.* § 20-17-108(6), (7). Indeed, the statute does not "[a]ffect[], limit[], or preclude[] the right of any party to assert any defense, remedy, immunity, or privilege otherwise authorized

10

by law." *Id.* § 20-17-108(4). Thus, the TPPA expressly disclaims creating any substantive right, or modifying any substantive right that may be asserted by any plaintiff or defendant.

This conclusion accords with the analysis used by Tennessee courts when addressing choice of law questions.[6] In *SunTrust Bank v. Ritter*, for example, the court held that statutes of limitations are procedural, and statutes of repose are substantive. 2018 WL 674000, at *4 (Tenn. Ct. App. Feb. 1, 2018). The court reasoned that "statutes of limitations . . . merely extinguish a party's remedy for a cause of action, not the rights giving rise to a cause of action," and do not begin operating until "a cause of action accrued." *Id.* Statutes of repose, on the other hand, "extinguish both the right and the remedy," and can "bar a cause of action before it has accrued." *Id.*

By this standard, the TPPA is procedural because it does nothing more than permit a dismissal with prejudice. Tenn. Code Ann. § 20-17-105(e). As explained in *Parvin v. Newman*, such dismissal would merely "extinguish the plaintiff's claim . . . includ[ing] all rights of the plaintiff *to remedies against the defendant*." 518 S.W.3d 298, 307 (Tenn. Ct. App. 2016) (emphasis added) (quoting *Creech v. Addington*, 281 S.W.2d 363, 379–80 (Tenn. 2009)); *see also Regions Bank v. Prager*, 625 S.W.3d 842, 849–50 (Tenn. 2021) (describing res judicata effect of dismissal with prejudice). Thus, a TPPA dismissal may bar Ms. Ensing's right to a remedy against the Defendants in Tennessee courts. It may or may not have that effect in other jurisdictions. But it would not prevent her from bringing a defamation claim against any other person or entity. And it certainly would not extinguish her substantive defamation claim.

---

[6] Like most jurisdictions, Tennessee courts apply forum law to matters of procedure. *State ex re. Smith v. Early*, 934 S.W.2d 655, 658 (Tenn. App. Ct. 1996).

11

Moreover, unlike a statute of repose, the TPPA cannot bar a cause of action before it accrues—indeed, it cannot be invoked until a lawsuit is filed.

The TPPA's cost-shifting provision, Tenn. Code Ann. § 20-17-107, is a further indicium that it is procedural: under Tennessee law, "questions of costs" are procedural. *SunTrust Bank*, 2018 WL 674000, at *4.

Finally, because the TPPA governs the sufficiency of defamation pleadings when asserted by a defendant, this suggests that it is a procedural "rule[] of pleading." *Id.*

### 3. Application of the TPPA Is Precluded by Rules 12 and 56

Having established that the TPPA is procedural under Tennessee law, the only remaining question is "whether the scope of the federal rule[s]"—in this case, Rules 12 and 56—are "sufficiently broad to control the issue before the court, thereby leaving no room for the operation of" the TPPA. *Shady Grove* 559 U.S. at 421. "The test is whether 'a Federal Rule of Civil Procedure "answer[s] the same question" as the [special motion to strike].'" *La Liberte v. Reid*, 966 F.3d 79, 87 (2d Cir. 2020) (citing *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1333 (D.C. Cir. 2015) (quoting *Shady Grove*, 559 U.S. at 398–99)). "If so, the Federal Rule governs, unless it violates the Rules Enabling Act." *Id.*

Several other Circuit Courts of Appeals have considered this question for other anti-SLAPP laws; the overwhelming majority have found that they do not apply in federal court. *See*, *e.g.*, *Tah v. Global Witness*, 991 F.3d 231, 238–39 (D.C. Cir. 2021) (holding District of Columbia's anti-SLAPP statute inapplicable in federal court) (petition for cert. seeking review on unrelated issue filed July 26, 2021); *La Liberte*, 966 F.3d at 87–89, 87 n.4 (holding California's anti-SLAPP law inapplicable in federal court, and noting that its holding accords with several dissents by Ninth Circuit judges); *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1357 (11th Cir. 2019)

(holding Georgia's anti-SLAPP statute inapplicable in federal courts); *Klocke v. Watson*, 936 F.3d 240, 245–46 (5th Cir. 2019) (holding Texas's anti-SLAPP law inapplicable in federal court); *Los Lobos Renewable Power, LLC v. Americulture, Inc.*, 885 F.3d 659, 673 (10th Cir. 2018) (holding New Mexico's anti-SLAPP statute inapplicable in federal court); *Abbas*, 783 F.3d at 1328 (same holding as *Tah*).

In their attempt to convince this Court not to follow Judge Richardson's decision in *Lampo*, Defendants argue that "any opinion relying on the *Abbas* approach" (Doc. 37, p. 8 n.3), betrays a fundamental misunderstanding of *Whitlock* because "Justice Scalia delivered the opinion for a five-justice majority with respect to Parts I (procedural history) and II-A (finding a conflict between Rule 23 and the New York rule)." *Whitlock*, 843 F.3d at 1091 n.2. However, Justice Stevens disagreed with Justice Scalia *only* as to the need for an inquiry into the procedural or substantive nature of the state law. *See id.*; *see also Shady Grove*, 559 U.S. at 424. Thus, "any opinion relying on the *Abbas* approach" to determine that Federal Rules 12 and 56 and a state anti-SLAPP law "answer the same question"—such as *Lampo Group LLC v. Paffrath*— is entirely consistent with *Whitlock*.

Judge Richardson's decision in *Lampo* is sound. Judge Richardson held that California's anti-SLAPP law was precluded by Federal Rules 8, 12, and 56 because it "requires plaintiffs to 'establish that there is a probability that [he or she] will prevail on the claim.' Thus, both the state and federal rules purport to answer the same question—the applicable standard for granting pre-trial judgment to defendants in federal court." 2019 WL 3305143, at *3 (citations omitted). Because the California law prescribed a different standard for dismissal than Rules 12 and 56, it was "in direct conflict with the Federal Rules of Civil Procedure." *Id.*

Likewise, in this case, the TPPA and Federal Rules 12 and 56 "purport to answer the same question—the applicable standard for granting pre-trial judgment to defendants in federal court." *Id.* The TPPA directly conflicts with Rules 12 and 56. And, as Judge Richardson noted in the *Lampo* opinion, "the standard provided by Tennessee's new anti-SLAPP law is different than that dictated by Federal Rules of Civil Procedure 8, 12, and 56." 2019 WL 3305143, at *3, n.6.

Indeed, the TPPA directly conflicts with Rule 12 because it requires a plaintiff to "establish[] a prima facie case for each essential element of the claim in the legal action." Tenn. Code Ann. § 20-17-105(b). The statute does not define "prima facie case," but the term is commonly understood as "[a] party's production of enough evidence to allow the fact-trier to infer the fact at issue and rule in the party's favor." *Prima facie case*, BLACK'S LAW DICTIONARY (11th ed. 2019) (second definition). This clearly conflicts with the standard for surviving a motion to dismiss, under which a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notably, the *Twombly* Court reaffirmed an earlier ruling that a prima facie pleading standard was "a heightened pleading standard," and thus "was contrary to the Federal Rules' structure of liberal pleading requirements." *Id.* (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002)).

The TPPA directly conflicts with Rule 56 because it requires a defendant to "mak[e] a prima facie case" that it is entitled to relief. Tenn. Code Ann. § 20-17-105(a). This is a higher burden than that required to obtain summary judgment under Rule 56. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

The TPPA also directly conflicts with Rule 56 because it mandates pretrial dismissal "if the petitioning party establishes a valid defense to the claims in the legal action," Tenn. Code Ann. § 20-17-105(c), regardless of whether the plaintiff has produced "enough evidence to allow the

14

fact-trier to infer the fact at issue and rule in the party's favor," *Prima facie case*, BLACK'S LAW DICTIONARY, *supra*. On the other hand, Rule 56 permits pretrial dismissal only if "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

Additionally, the TPPA directly conflicts with Rule 56 because summary judgment is generally allowed only "after adequate time for discovery," *Celotex Corp.*, 477 U.S. at 322. TPPA petitions must be filed within sixty days of service of the complaint, Tenn. Code Ann. § 20-17-104(b), long before an "adequate time for discovery" has been afforded to the parties. *See Klocke*, 936 F.3d at 246 (holding Texas anti-SLAPP law not applicable in federal court because it "imposes evidentiary weighing requirements not found in the Federal Rules, and operates largely without pre-decisional discovery, [so] it conflicts with those rules"). The TPPA does not apply in federal court.

**B.      Similar to the Ninth Circuit, This Court Should Allow Discovery Because the TPPA's Discovery Restrictions Are Antithetical to the Federal Rules.**

With respect to the TPPA's automatic discovery stay specifically, that provision conflicts with the Federal Rules of Civil Procedure. As stated by the Ninth Circuit in *Metabolife*,

> Procedural state laws are not used in federal court if to do so would result in a "direct collision" with a Federal Rule of Civil Procedure. In the absence of a "direct collision," the court must make the "typical, relatively unguided Erie choice." This choice should be made by balancing the state interest in its procedural rule with the twin purposes of the Erie doctrine, "discouragement of forum-shopping and avoidance of inequitable administration of the laws."

264 F.3d at 845 (citations omitted).

In requiring the district court to allow the plaintiff to take discovery from the experts retained by the defendants prior to a decision on the defendant's anti-SLAPP motion, the Ninth Circuit analyzed whether two sections of the California anti-SLAPP statute, Cal. Civ. Proc. §

15

425.16(f) and (g), "directly collide" with the Federal Rules. Subsection 425.16(f) of the California Code provides that an anti-SLAPP motion may be filed within sixty days of the filing of the complaint. Subsection 425.16(g) of the California Code provides that the filing of an anti-SLAPP motion automatically stays all further discovery until the court rules on the motion; however, upon presentation of a motion and for good cause shown, a court may order that specified discovery be conducted notwithstanding the automatic stay. According to the *Metabolife* court, "Together, these two subsections create a default rule that allows the defendant served with a complaint to immediately put the plaintiff to his or her proof before the plaintiff can conduct discovery." 264 F.3d at 846 (quoting *Rogers*, 57 F. Supp.2d at 980.)

The Ninth Circuit found that the cited provisions of § 425.16 "directly collide" with Fed. R. Civ. P. 56 in that these provisions not only limit discovery, but make discovery the exception rather than the rule. Conversely, Rule 56, as the Supreme Court has held, ensures that adequate discovery be allowed prior to a summary judgment motion being considered. *Metabolife*, 264 F.3d at 846 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).) Based on this conflict, the Ninth Circuit determined that these two provisions, which limit discovery, are in conflict with Rule 56 and, therefore, cannot be applied in federal court. *Id*.

In the context of issues such as actual malice and falsity, the substance of which are evaluated at the pleadings stage of defamation suits when those suits are subjected to a motion to strike under anti-SLAPP statutes, the *Metabolife* court held that a federal court "should not scrutinize Plaintiff's evidence of facts uniquely within the Defendants' control before ordering discovery to enable Plaintiff to meet its burden of opposing Defendants' anti-SLAPP motions." *Metabolife*, 246 F.3d at 846 (citing *Metabolife Int'l, Inc. v. Wornick*, 72 F. Supp. 2d 1160, 1166

16

(S.D. Cal. 1999).) Given that discovery related to intent—which is the essence of actual malice—was within the defendant's control, the Ninth Circuit overruled the district court's decision preventing the plaintiff from taking discovery on the issue of falsity, finding that defendant's assertion that plaintiff's falsity allegation was not supported was in error. *Id.* Because the basis of that assertion was through experts hired by defendant and facts controlled entirely by the defendant, the plaintiff was entitled to discovery.

Here, notwithstanding the fact that Defendants' TPPA motion to strike is unsupported by any expert, affidavit, or other evidence, Defendants have control over evidence of their intent, in the form of internal communications and the mindset of the individuals issuing Defendants' public statements. Under the Federal Rules of Civil Procedure, Ms. Ensing is entitled to discover those facts promptly.

For these reasons, other federal courts across the country have agreed that anti-SLAAP automatic-discovery stay provisions conflict with the Federal Rules of Civil Procedure. *See, e.g.*, *AR Pillow Inc.*, 2012 WL 6024765, at *3 (holding that the Ninth Circuit's holding that the automatic stay of discovery in California's statute could not apply in federal court applied equally to the Washington statute); *Nixon*, 2009 WL 2026343, at **3-4 (holding discovery-limiting procedures of Indiana's anti-SLAPP statute, Ind. Code § 34-7-7-6, did not apply because the federal procedural rule superseded the conflicting state-law procedural rule restricting the scope of discovery).

The TPPA does not apply in federal court, and the Court should deny Defendants' motion to stay discovery pursuant to the TPPA's automatic-stay provision.

**III.    Regardless of Whether the TPPA Applies, Ms. Ensing Is Still Entitled To Discovery**

Ms. Ensing is entitled to limited discovery under the TPPA, and "good cause" justifies her request.  To rebut Defendants' actual-malice defense (assuming, *arguendo*, that such a showing is required) and to establish the evidentiary basis for her *prima facie* case, Ms. Ensing requests the following limited discovery: (1) the internal communications of Defendants that led to the publication of Defendants' allegedly defamatory statements; (2) a deposition of Ms. Yeh regarding her allegedly defamatory statements; and (3) the Rule 30(b)(6) deposition of Sephora regarding its allegedly defamatory statements.[7]  Tennessee courts applying the TPPA have allowed such discovery, and the Court should do so here, too.  (*See* November 1, 2020 Order, *SmileDirectClub, Inc. et al. NBCUniversal Media, LLC*, Case No. 21C1054 (Brothers, J.) (granting motion to take specified and limited discovery), attached hereto as **Exhibit 1**).)

Defendants' arguments against taking limited discovery have no merit.  Defendants argue the discovery sought is "so far reaching that it would subsume nearly all discovery Plaintiff would hope for in this case" and "bears no relationship to the TPPA Petition." (Doc. 37, p. 13.)  This is not true.  The discovery sought is narrow, limited solely to the events giving rise to the defamatory statements, and does not involve any non-party discovery.  It includes no discovery regarding damages or Ms. Ensing's claims for tortious interference with contractual and business relations.  It bears directly on Defendants' TPPA petition, and in particular Defendants' argument that they did not act with "actual malice."

Defendants also argue that Ms. Ensing did not seek such discovery before responding to the motion to dismiss, so the "window to seek that discovery has closed."  (Doc. 37, p. 13.)  In

---

[7] As stated previously, Plaintiff also is entitled to jurisdictional discovery, and that discovery would be limited to topics identified in a 30(b)(6) deposition notice of Sephora.  *See* Introduction at p. 3, n.2, *supra*.

fact, under Federal Rule of Civil Procedure 26(d)(1), discovery is automatically stayed prior to the Rule 26(f) conference, so Ms. Ensing could not seek such discovery prior to her deadline to respond to the motion to dismiss. Ms. Ensing made her request for discovery at the earliest available opportunity: at the initial case management conference when the Court *sua sponte* raised the TPPA discovery-stay issue.

If anything, Defendants' timing argument exposes the precise problem with applying the TPPA in federal court: the TPPA's timing and discovery provisions run headlong into the Federal Rules of Civil Procedure and even this Court's Local Rules. Those timing and discovery provisions do not apply in federal court.

## CONCLUSION

For all the foregoing reasons, Ms. Ensing respectfully requests that the Court deny Defendants' motion to stay discovery.

Respectfully submitted,

s/ Timothy L. Warnock
Timothy L. Warnock (12844)
Katherine R. Klein (19336)
RILEY WARNOCK & JACOBSON, PLC
1906 West End Avenue
Nashville, TN 37203
(615) 320-3700
(615) 320-3737 (facsimile)
twarnock@rwjplc.com
kklien@rwjplc.com

John M. Pierce (admitted *pro hac vice*)
PIERCE BAINBRIDGE P.C.
355 S. Grand Ave., 44th Floor
Los Angeles, CA 90071
(213) 400-0725
jpierce@piercebainbridge.com

19

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served upon the following via the Court's ECF system:

Charles K. Grant
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC
1600 West End Avenue, Suite 2000
Nashville, TN 37203
(615) 726-5767
(615) 744-5767 (facsimile)
cgrant@bakerdonelson.com

*Counsel for Defendants*

Robert E. Shapiro
Joshua W. Mahoney
Connor T. Gants
Carmel I. Dooling
BARACK FERRAZZANO KIRSCHBAUM & NAGELBERG LLP
200 W. Madison Street, Suite 3900
Chicago, Illinois 60606
(312) 984-3100
rob.shapiro@bfkn.com
joshua.mahoney@bfkn.com
connor.gants@bfkn.com
carmel.dooling@bfkn.com

*Counsel for Defendants*

on this the 12th day of October 2021.

s/ Timothy L. Warnock

20