IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| AMANDA ENSING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | NO. 3:21-cv-00421 |
| v. | ) | |
| | ) | JUDGE CAMPBELL |
| SEPHORA USA, INC., et al., | ) | MAGISTRATE JUDGE FRENSLEY |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

Pending before the Court is a Motion to Dismiss filed by Defendants Sephora USA, Inc. ("Sephora") and Deborah Yeh ("Yeh"). Plaintiff filed a Response (Doc. No. 25), and Defendants filed a Reply (Doc. No. 29). For the reasons stated herein, the Motion will be **GRANTED** in part.

## I.     FACTUAL BACKGROUND

Plaintiff Amanda Ensing is a "beauty and lifestyle influencer" who shares creative content across several social media platforms. (Compl., Doc. No. 1 ¶¶ 3, 16). Some of her content, which she shares to her more than one million followers, is sponsored by beauty and lifestyle companies. (*Id*. ¶ 16). Through such sponsorships, Plaintiff earned approximately $100,000 per month for her beauty vlogs. (*Id*.). One such sponsoring company is Sephora, with whom Plaintiff has collaborated at least three times. (*Id*.). Plaintiff alleges that the business relationship between herself and Sephora was a good one. (*Id*. ¶ 17).

On January 6, 2021, Plaintiff tweeted a picture of then-President Donald Trump with the caption "It will be Biblical." (*Id*. ¶ 18).  She followed this tweet with another, stating "There's not enough popcorn in the world for what's about to happen," and later added "This is referring to the amount of corruption about to be revealed in our government. As usual, the left twists our words."

(*Id*.). She posted additional tweets clarifying that her earlier posts were not intended to condone the violence that took place at the United States Capitol in Washington D.C. (*Id*. ¶ 20).

Shortly thereafter, RewardStyle, Inc. contacted Plaintiff on behalf of Sephora to propose that Plaintiff create a Sephora-focused, sponsored YouTube video.[1] (*Id*. ¶ 21). On or about January 21, 2021, Plaintiff and Sephora contracted for the creation of the YouTube video. (*Id*. ¶ 22). Plaintiff received approval of the finished video from Sephora on January 28, 2021, and posted the video to her YouTube channel the following day. (*Id*. ¶¶ 24, 25). An unspecified number of individuals responded online by creating posts and comments which accused Plaintiff of spreading "hate and misinformation," related her tweets on January 6, 2021. (*Id*. ¶ 26). Sephora responded to the wave of criticism on February 3, 2021, stating:

> We were recently made aware of concerning behavior by Ms. Ensing on her social media platforms. Most recently, she made light of the violence and tragic loss of life at our nation's Capital [sic] last month. For this reason, we made the decision to cease all programming with her indefinitely, including having the video she created through an external vendor, taken down.

(*Id*. ¶ 28). Plaintiff alleges that these false statements were immediately repeated across social media, and as a result, she suffered intense criticism and backlash. (*Id*. ¶¶ 28, 29). Additionally, she alleges, the story was picked up by national media outlets, and other brands ceased collaborating with Plaintiff. (*Id*. ¶ 29).

Plaintiff alleges additional defamatory statements made by Defendants, including a statement made by Sephora's Chief Marketing Officer Deborah Yeh. (*Id*. ¶ 35). Plaintiff alleges that Yeh sent an email to Sephora employees which stated that Sephora had terminated its relationship with Plaintiff because "she used her platform to share or highlight racially insensitive

---

[1]      RewardStyle, Inc. is not a party to this action.

2

and discriminatory language, and made light of the violence at our nation's Capital [sic] last month." (*Id*. ¶ 35).

As a result of Sephora's comments, and the negative response, Plaintiff alleges that her beauty and lifestyle influencer career has been dismantled and her online accounts have been relentlessly attacked by third parties.

Plaintiff sued Sephora, Yeh, and John Does 1-1000, bringing claims for defamation, false light invasion of privacy, tortious interference with contractual relations, tortious interference with prospective business relationship, and conspiracy. Defendants Sephora and Yeh filed the pending motion to dismiss this action for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), improper venue under Fed. R. Civ. P. 12(b)(3), and failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

## II.     PERSONAL JURISDICTION

### A.     Legal Standard

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to file a motion to dismiss for lack of personal jurisdiction. "In deciding a motion to dismiss for lack of personal jurisdiction, the district court may rely 'upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions.'" *MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 899 (6th Cir. 2017) (quoting *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)). The party asserting jurisdiction has the burden of proof. *Ingram Barge Co. v. Louis Dreyfus Co.*, 455 F. Supp. 3d 548, 554 (M.D. Tenn. 2020) (citing *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002)). "Although plaintiffs have the burden of establishing that a district court can exercise jurisdiction over the defendant, that burden is 'relatively slight' where, as here, the district court rules without conducting an evidentiary

3

hearing." *MAG IAS Holdings, Inc.*, 854 F.3d at 899 (quoting *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc*., 503 F.3d 544, 549 (6th Cir. 2007)). "To defeat dismissal in this context, plaintiffs need make only a prima facie showing that personal jurisdiction exists." *Id*. To do so, the plaintiff "may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing the court has jurisdiction." *Ingram Barge Co.*, 455 F. Supp. 3d at 554 (citing *Theunissen*, 935 F.2d at 1458). When determining whether the party asserting jurisdiction has made a *prima facie* showing, the court construes the facts in the light most favorable to that party. *Id*.

**B.    Analysis**

The principal of personal jurisdiction is rooted in the Due Process Clause of the Fourteenth Amendment. *Walden v. Fiore*, 571 U.S. 277, 283 (2014). The Court may only exercise "personal jurisdiction over a nonresident defendant" if jurisdiction "meets the [forum] state's long-arm statute and constitutional due process requirements." *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005). Tennessee's long-arm statute authorizes Tennessee courts to exercise jurisdiction on "[a]ny basis not inconsistent with the constitution of this state or of the United States," in other words, to the limits of due process. *Mfrs. Consol. Serv., Inc. v. Rodell*, 42 S.W.3d 846, 855 (Tenn. Ct. App. 2000) (citing Tenn. Code Ann. §§ 20-2-214(a)(6), 20-2-225(2)); *see also Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 477 (6th Cir. 2003) (citing *Payne v. Motorists' Mut. Ins. Cos*., 4 F.3d 452, 454 (6th Cir. 1993) ("[T]he Tennessee long-arm statute has been interpreted as coterminous with the limits on personal jurisdiction imposed by the due process clause.")). Accordingly, the Court need only address the issue of due process to satisfy both prongs.

In order for the Court to exercise personal jurisdiction over the Defendants, the burden is on Plaintiff to show that Sephora and Yeh have sufficient minimum contacts with Tennessee such

4

that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice,'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Minimum contacts exist where a defendant purposefully avails itself of the privilege of conducting activities within the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

Personal jurisdiction manifests in one of two ways: general or specific. *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 678 (6th Cir. 2012). "General jurisdiction depends on continuous and systematic contact with the forum state, so that the courts may exercise jurisdiction over any claims a plaintiff may bring against the defendant." *Id*. at 678-79 (citing *Kerry Steel, Inc. v. Paragon Indus., Inc*., 106 F.3d 147,149 (6th Cir. 1997)). "Specific jurisdiction, on the other hand, grants jurisdiction only to the extent that a claim arises out of or relates to a defendant's contacts in the forum state." *Id*. Here, Plaintiff appears to concede that general jurisdiction does not exist, arguing only the factors related to specific jurisdiction. (*See* Doc. No. 25 at 19-21). Accordingly, the Court turns to the analysis for specific jurisdiction.

"Specific jurisdiction requires us to focus on the 'affiliation between the forum and the underlying controversy.'" *Power Investments, LLC v. SL EC, LLC*, 927 F.3d 914, 917 (6th Cir. 2019) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "The foreign defendant's 'suit-related conduct' must establish 'a substantial connection with the forum state.'" *Id*. (quoting *Walden*, 571 U.S. at 284). To purposely avail itself of the privilege of acting in the forum state, "[t]he defendant needs its own affiliation with the State." *Id*. (internal quotations omitted). "[T]he plaintiff cannot be the only link between the defendant and the forum." *Id*.

Plaintiff's affidavit primarily focuses on her own relationship with Tennessee. (*See* Doc. No. 26). This is a plainly insufficient showing under a standard, which is governed by the

5

defendants' contacts with the forum state, not the plaintiff's. *See Walden*, 571 U.S. at 284 ("We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum state."). However, she does make three averments which warrant discussion. First, Plaintiff states that she entered into a contract with Sephora for the creation of a single video and did so while residing in Tennessee. (Doc. No. 26 ¶¶ 6,7). Next, she states that she has been informed that certain Tennessee residents read the alleged defamatory statements (*Id*. ¶ 12). In closing, she states that, upon information and belief, the Defendants knew she resided in Tennessee. (*Id*. ¶ 13).

Even taking these averments together and construing them in the light most favorable to Plaintiff, she has not made a *prima facie* showing that the Court has personal jurisdiction over the Defendants. At best, Plaintiff has attributed knowledge and intent to Defendants, but she has not raised any specific conduct to satisfy the minimum contact requirements. For example, Plaintiff argues that Defendants knew she resided in Tennessee, and therefore "it is reasonable to infer that they at least hoped, if not intended, that such statements would reach Tennessee." (Doc. No. 25 at PageID# 144). Plaintiff cannot rely on her own contacts with Tennessee to characterize Defendants' actions as targeting Tennessee. *See Blessing*, 988 F.3d at 906 (finding that defendants' tweets "did not create sufficient contacts with Kentucky simply because the plaintiffs have Kentucky connections.").

Plaintiff's argument that the defamatory conduct arises out the parties' business relationship is equally unavailing. Even if the Court found Plaintiff's assertion, which cites only the allegations of her complaint for support, to be persuasive here, the underlying business relationship is insufficient to satisfy the minimum contacts requirement. *See Power Investments, LLC v. SL EC, LLC*, 927 F.3d 914, 919 (6th Cir. 2019) (holding that Kentucky could exercise

6

jurisdiction over nonresident defendant who had "extensively" communicated with Kentucky plaintiff about deal to purchase a power plant for "well over a year"); *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 551 (6th Cir. 2007) (holding that nonresident defendants were subject to jurisdiction in Michigan based on their extensive business relationship with a Michigan company); *Neal v. Janssen*, 270 F.3d 328, 333 (6th Cir. 2001) (holding that Tennessee could exercise jurisdiction over nonresident who "engaged in a business transaction with [Tennessee] plaintiffs that went on over a substantial period of time" and then "defrauded plaintiffs"). The extensive business relationships found in these cases are not analogous to Plaintiff's one-time contract with Defendants to create a single YouTube video, and Plaintiff cites no authority to the contrary.

Plaintiff's final argument compares this case to *Calder v. Jones*, 465 U.S. 783 (1984), arguing that the exercise of jurisdiction over Defendants is proper because Tennessee was the focus of Defendants' statements and because Plaintiff suffered and continues to suffer harm in Tennessee. Plaintiff's argument fails to account for the Sixth Circuit's holding in *Blessing v. Chandrasekhar*, 988 F.3d 899 (6th Cir. 2021). In *Blessing*, the court held that in cases involving allegedly tortious postings on social media, "personal jurisdiction is absent when the communication was not specifically directed at the forum state." *Id*. at 905. Plaintiff has not presented anything from which the Court could infer that Defendants made their social media posts "hoping to reach [Tennessee] specifically as opposed to their [social media] followers generally." *Id*. at 906. Plaintiff does not allege or aver that Yeh's email was received by anyone in Tennessee.

For these reasons, Plaintiff has failed to make a *prima facie* showing of that this Court may exercise personal jurisdiction over the Defendants. Plaintiff requests that the Court permit jurisdiction discovery "if the Court finds that it lacks personal jurisdiction." (Doc. No. 25). The

Court finds that jurisdictional discovery at this stage is not warranted. Plaintiff's request is denied.

## III.     TRANSFER OF VENUE

Regardless of the Court's finding on personal jurisdiction, Defendants move under Fed. R. Civ. P. 12(b)(3) to dismiss this action or transfer to a proper venue. Defendants cite 28 U.S.C. § 1406(a) and argue that venue is improper in this district. As a result of the above ruling on personal jurisdiction, the Court must also consider 28 U.S.C. § 1631. Section 1631 provides that, if a court in a civil action finds it lacks jurisdiction, "the court shall, if it is in the interest of justice, transfer such action" to any other court in which the action could have been brought at the time it was filed.[2] "A court may decide to dismiss an action rather than transferring it under § 1631 either because (1) no permissible federal court would have jurisdiction over the action, or because (2) transfer would not be in the interest of justice." *Roman v. Ashcroft*, 340 F.3d 314, 328 (6th Cir. 2003) (internal quotations omitted).

The first factor is inapplicable here. Defendants concede that personal jurisdiction exists in the Northern District of California, "where both Ms. Yeh and Sephora reside." (Doc. No. 18 at PageID# 68). Accordingly, the Court turns to the question of whether transfer to that district is in the interest of justice. Such determination is left to the discretion of the Court. *Stanifer v. Brannan*, 564 F.3d 455 (6th Cir. 2009) (noting that Sections 1406 and 1631 "confer broad discretion in ruling on a motion to transfer" venue). Courts generally favor transfer, preferring that cases be adjudicated on the merits. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463 (1962). Typically, absent a showing of bad faith by the Plaintiff in bringing an action in an improper venue, transfer is appropriate. There is neither evidence nor argument that Plaintiff acted in bad faith or intentionally

---

[2]     The Sixth Circuit has found that jurisdiction here refers to either subject-matter jurisdiction or personal jurisdiction. *Roman v. Ashcroft*, 340 F.3d 314, 328 (6th Cir. 2003).

filed this action in an improper venue. The Court finds that the interest of justice is best served by transferring this case to the Northern District of California.

## IV.    CONCLUSION

For the reasons stated herein, Defendants' Motion is **GRANTED** in part. The Court finds that it lacks personal jurisdiction over the Defendants. This case will be **TRANSFERRED** to the Northern District of California. Having determined that the Court lacks personal jurisdiction over the Defendants, the Court does not reach the merits arguments raised by the parties.

An appropriate order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE